14398

OTT v. OTT *ET AL.*

(188 S. E., 789)

*Mr. W. C. Wolfe,* for appellants,

*Messrs. Zeigler & Brailsford,* for respondent,

December 15, 1936.

The opinion of the Court was delivered by MR. JUSTICE BONHAM.

Preston Ott brought action in the County Court of Orangeburg County to foreclose a mortgage of real estate, which the complaint alleges was executed and delivered to him by Louie P. Ott, along with the bond which the mortgage was given to secure. The complaint alleges also that the bond has been lost, that in drawing the mortgage the scrivener made the mistake of inserting the name of Louie P. Ott at several places where the name of Preston Ott should

have been written, and asks that this mistake be remedied. It is further alleged in the complaint that "the bond and mortgage were made payable to 'Preston Ott, Trustee,' but in reality the consideration of $1,150.00 expressed in the deed was money that belonged to Preston Ott, and not as Trustee, and is due to him in his own right."

Leroy Ott made default. Louie P. Ott and Viola Myers answered, saying, *inter alia:* That Mildred E. Ott died intestate, December 26, 1929, leaving her, surviving as her sole heirs-at-law and distributees, her husband, Preston Ott, and her children, Louie P. Ott, Viola Myers, and Leroy Ott; that Preston P. Ott was duly appointed administrator of her estate; that during the course of the administration of the estate, Louie P. Ott, at the suggestion of the administrator, executed and delivered to the administrator, as trustee, the bond and mortgage set out in the complaint; that the bond and mortgage were so made and delivered for the purpose of securing the payment of the loan made by the intestate Mildred E. Ott in her lifetime; that the bond and mortgage were made to Preston Ott as trustee on the distinct understanding that he would hold and collect such bond and mortgage for the benefit of himself and his three children as an asset of the estate of Mildred E. Ott.

The case was heard by the Honorable B. H. Moss, Judge of the County Court of Orangeburg, without a jury. His Honor, after taking the testimony and hearing arguments of counsel, filed his decree by which he found as a matter of fact that the sum secured by the bond and mortgage, the subject of the action, is the individual property of the plaintiff, Preston Ott, and the amount due thereon as of that date was $1,507.36. As a matter of law, he found that the mortgage should be reformed so as to correct the mistake of the scrivener in inserting the name of Louie P. Ott in several places as mortgagee, whereas he was in fact the mortgagor. He ordered that plaintiff have judgment against Louie P. Ott for the sum of $1,507.36, and the additional

sum of $150.00 as attorneys' fees He ordered the foreclosure of the mortgage and the sale of the mortgaged property.

Leroy Ott has filed in the record a disclaimer of any interest in the case. He did not testify.

The appeal from the decree is based on numerous exceptions. In our opinion the whole matter is settled by the determination of the question: Did Preston Ott hold the bond and mortgage as his individual property, or as trustee of his wife's estate?

The case is one in chancery and was heard by the trial Judge without a jury. His findings of fact are, therefore, open to review by this Court.

The history of the dealings of these kinsfolk with each other is peculiar. It seems safe to say that Preston Ott put his money and property in his wife's name for the reason, as he says: "I did not want certain people to know that I was lending money, or had some money to lend."

When Mildred E. Ott died intestate December 26, 1929, her estate consisted of a tract of 26 acres of land, a mortgage for $1,600.00 given her by Louie P. Ott, a Liberty Bond for $1,000.00, an automobile and other personal property of some value. It is significant that Preston Ott was not made administrator of his wife's estate until August, 1933. His wife died in December, 1929, the mortgage now being foreclosed was executed to Preston Ott the fourth day of April, 1930, three months after Mrs. Ott's death.

The oral testimony given by Preston Ott, on the one hand, and Louie P. Ott and Viola Myers on the other hand, is wholly irreconcilable. The solution of the situation must rest upon the analysis of the undisputed facts.

Preston Ott contends that he lent the money, covered by the mortgage, to Louie P. Ott out of his own pocket. Inasmuch as it is undisputed, and is so found by the trial Judge, that about December 10, 1929, Louie P. Ott executed a mortgage to Mrs. Mildred E. Ott for the sum of $1,600.00,

and that certainly at least $1,178.37 was withdrawn from the Edisto National Bank where it was on deposit in the name of Mrs. Mildred E. Ott, the reasonable deduction is that when Preston Ott makes that statement, he means to say the money was his because he gave it to Mrs. Ott. It seems to be undisputed that he gave her the 26 acres of land, the $1,000.00 Liberty Bond, and the automobile. If he gave to Louie P. Ott the money that went into the mortgage to Mrs. Ott, why did he, after Mrs. Ott's death, have the mortgage made to himself as trustee? If he did not want other people to know he had money to lend, he had but to leave the money in the name of his wife's estate. He had as much right to the tract of land, the Liberty Bond, and automobile as he had to the money invested in the mortgage to Mrs. Ott's estate. Yet he sells the Liberty Bond and the automobile as administrator and divides the proceeds among himself and the children, according to the statute of distribution. He has Louie P. Ott to pay the funeral expenses of his wife's estate and credits the amount on the mortgage. He buys the land from the children and pays them for their interest in it. In other words, he treats all of this property, including this mortgage given by Louie to his mother, as the property of his wife's estate "till a change comes over the spirit of his dream." Then he does not wish to divide the proceeds of the mortgage with the children. Mrs. Myers, at folios 75-76 of the record, makes this statement, which is not denied or explained by plaintiff:

"Q. So your father asked you to give him titles? A. Yes, he asked us about it several times; he said he was going to get married again and wanted his second wife to get what he had."

· We cannot escape the conviction that the clear preponderance of the evidence is against the findings of fact by the trial Court, to wit:

"1. That the Eleven Hundred Seventy-eight and 37/100 ($1,178.37) Dollars on deposit in the Edisto National Bank

during 1929 in the name of Mrs. Mildred E. Ott, actually belonged to the plaintiff.

"2. That on or about December 10, 1929, plaintiff made a loan of Sixteen Hundred ($1,600.00) Dollars of his own money to the defendant, Louie P. Ott, and took as evidence thereof, and security. therefor, a bond and mortgage executed by Louie P. Ott to Mrs. Mildred E. Ott.

"3. That Mrs. Mildred E. Ott, during her lifetime, was vested with the bare legal title in this bond and mortgage for the benefit of plaintiff.

"4. That the bond and mortgage set forth in the complaint secures an indebtedness due the plaintiff individually."

The respondent contends that the appellants are estopped to claim any part of this bond and mortgage because they accepted the amounts paid them by the administrator shown to be due them by his final accounting.

This doctrine might be applicable but for the fact that the administrator had an asset of the estate of his intestate, viz., the mortgage of Louie P. Ott to Mildred E. Ott, put in his name as trustee after the death of the intestate. He did not then claim the mortgage as his own; there is evidence that he said he would collect it and pay the children their shares. His claim is that the children ought reasonably to have demanded the collection of the mortgage during the administration of the estate. It may be said with equal force that he knew that the children relied on him to fulfill the conditions of the trust. Is the plaintiff in position to invoke the doctrine of equitable estoppel?

"The final element of an equitable estoppel is that the person claiming it must have been misled into such action that he will suffer injury if the estoppel is not declared. That is, the person setting up the estoppel must have been induced to alter his position, in such a way that he will be injured if the other person is not held to the representation or attitude on which the estoppel is predicated. Furthermore, an equitable estoppel cannot arise except when

justice to the rights of others demands. It was never intended *to work a positive gain to a party.*" (Italics added.) 10 R. C. L., 697, 698.

Lined up with this declaration of the law of equitable estoppel, how does the plaintiff's plea of estoppel appear?

·   The record of the Probate Court does not appear in the record and one does not know whether the parties in interest signed receipts in full for their shares in their mother's estate. Even so, they could explain such receipt. It appears by the record that Mrs. Myers said:

"Q. Were you satisfied with the settlement? A. Well, I took what he gave me and did not make any complaint.

"Q. Were you satisfied at that time? A. Yes, I guess I was, I took it. I was willing to do what he wanted done. *But that did not have anything to do with this at all.*" (Italics added.)

Clearly Mrs. Myers did not understand that the mortgage matter had been settled to the exclusion of the claim of interest therein by the heirs-at-law and distributees of her mother's estate.

Again, at folio 64 of the record, when Louie P. Ott was being cross examined, he was asked:

"Q. Mr. Ott, did you not accept a check from your father after he had settled your mother's estate that was to represent your interest? A. Yes, but not this mortgage."

In what respect has the position of the plaintiff been altered to his detriment by the action of the appellants? When he claims to have finally settled his wife's estate, he still had the mortgage made to him as trustee. He still had the right and the opportunity to foreclose it as trustee. But he changed the status by alleging and claiming that it was his property individually. Up to that time no occasion had arisen for appellants to contest his claim. He was cognizant of the fact that they claimed it was an asset of the estate of his intestate; he had treated with them on that basis. If he desired that issue to be determined before he undertook to be discharged,

it was more his duty than theirs to take the initial steps to have it done.

We do not think the plea of estoppel is available to him.

The plaintiff claims that he never relinquished his title to the money which he deposited in the bank to the credit of his wife. Here was a gift *inter vivos*. To make such a gift complete (it is conceded), the donor must intend to part with the title to the property. In the case of a gift of money on deposit, to show a passing of title, "whatever is sufficient to place the fund under the donee's control, so that nothing further is necessary on the part of the donor to give possession, is sufficient." 12 R. C. L., 946.

In the present case the money in dispute was in the bank in the name of Mildred E. Ott; she was in possession of the deposit book; she drew her check on the fund and the bank honored it. The donor, the plaintiff in this action, knew of these facts in the lifetime of the donee and made no objection. to, nor denial of, her right to withdraw the fund till after her death. It may be conceded that a mere deposit in the name of another is not sufficient in itself alone to prove a gift, but it may be shown by other circumstances. In this case, the plaintiff put his land, his Liberty Bond, and his automobile in his wife's name at the time he deposited money in the bank in her name, and he has never claimed that the bond, the land, and the automobile were not gifts; and he never claimed that the deposit in the bank was not a gift until three years after his wife's death.

"A gift *inter vivos* as its name imports, is a gift between the living. It is a contract which takes place by the mutual consent of the giver, who divests himself of the thing given in order to transmit the title of it to the donee gratuitously, and the donee who accepts and acquires the legal title to it. It operates, if at all, in the donor's lifetime, immediately and irrevocably; it is a gift executed; no further action of the parties; no contingency of death, or otherwise, is necessary to give it effect." 282 C. J., 621, 622.

It would seem to be a dangerous doctrine to announce that a gift *inter vivos* possessing all the indicia of validity may be set aside after the death of the donee upon the bare assertion, even under oath, of the donor that he never intended to part with the title.

The judgment of the lower Court is reversed.

It appears that the parties are agreed upon the amount due on the mortgage debt. If they desire to do so, we do not see why they may not agree to have the trial Court amend its decree of foreclosure in accordance with the conclusions herein announced, and so amend it as to distribute the proceeds of sale of the mortgaged premises one-third to Preston Ott, and one-third of two-thirds each to Louie P. Ott, Viola Myers, and Leroy Ott. This, however, is merely by way of suggestion, and is not obligatory.

Mr. Chief Justice Stabler and Messrs. Justices Carter, Baker and Fishburne concur.