15318

WHITE v. SOUTHERN OIL STORES, INC.

(17 S. E. (2d), 150)

*Messrs. Price & Poag,* of Greenville, for appellant,

*Mr. D. B. Leatherwood,* of Greenville, for respondent,

October 30, 1941.

The opinion of the Court was delivered by MR. ASSOCIATE JUSTICE BAKER.

This is a tort action for slander, and resulted in a verdict in favor of the respondent in the sum of $750.00 actual, and $250.00 punitive damages.

The respondent was employed by appellant, the owner of a number of gasoline and oil service stations in the South as the manager of its station at Greenville, S. C. Following a

checking and auditing of this filling station on or about April 20, 1939, by H. G. Lonas, a representative and agent of appellant, and a part of whose duties was to check and audit the various stations operated by appellant, respondent was on April 21, 1939, discharged as the manager of said station.

It is alleged in the complaint that H. G. Lonas, the agent of appellant as aforesaid, during the week following the discharge of respondent, stated to H. C. Harvley, the father-in-law of respondent, "in substance as follows: 'that the defendant had fired the plaintiff herein, because of a large shortage at said station, which ·shortage had been brought about by plaintiff personally taking gasoline from tank cars of the defendant for his personal use and for the personal use of other employees at said station' thereby charging the plaintiff with larceny, * * *."

While the complaint set forth other statements derogatory to respondent alleged to have been made by the same agent to two others, upon a trial of the case respondent relied solely upon the statements made to his father-in-law, Mr. Harvley, he being the only witness for respondent, and the respondent himself not being offered as a witness; hence it is unnecessary to make further reference to the allegations of the complaint. And in the light of the testimony for the respondent, the failure of the appellant to put up any testimony, and the issues raised by this appeal, it will suffice to say that the answer of appellant denied the making of the alleged slanderous statement concerning respondent to Mr. Harvley, but pleaded the truth of a shortage.

As hereinbefore stated, the only witness on behalf of respondent was his father-in-law, who testified in part as follows:

"In April, 1939, Mr. Lonas came to see me and told me it had been necessary to fire Mr. White as their manager on account of a large shortage of gasoline which had been removed from cars or tanks at the station, and not only Mr.

White used the gas for his own use, but for the use of other employees at the station.

"Q. He told you it had been necessary to fire him for the large shortage that had been brought about by whom? A. By Mr. White keeping gasoline not only for his use, but for the use of other employees at the station.

"Q. Did he tell from what source? A. Removed it from tank cars before it was run through the main.

"Q. What do you mean by tank cars? A. Gasoline comes in tank cars, eight or ten thousand gallons to the tank.

"Q. And is transferred to— A. To upright tanks which have meters on them."

Upon the announcement by counsel for plaintiff (respondent) that plaintiff would offer no further testimony, appellant moved to be permitted to put respondent on the stand as a hostile witness, and cross examine him. This motion was refused, and thereupon appellant announced that it would not offer any evidence.

The "Issues" raised by this appeal are: (1) Did the Court err in refusing appellant's motion to call respondent as a hostile witness? (2) Was respondent under the burden of proving the falsity of the charges alleged to have been made against him? (3) Did the trial Judge err in charging the jury that as a matter of law the words alleged to have been spoken by appellant against the respondent were slanderous *per se*?

It will be noted that appellant was not refused the right to call the respondent as a witness, but his motion was to be permitted to call him as a hostile witness and cross examine him.

Section 675 of the Code expressly permits the examination of the adverse party, either at the trial, or conditionally, or upon commission. Section 676 of the Code makes provision for the "Examination of Adversary before Trial," and Section 677 of the Code provides a method of compelling the adverse party to attend for such examination, and permits the use of the testimony thus taken by either party to

the trial. Section 678 of the Code permits "the examination of the party, thus taken," to be rebutted by adverse testimony. We refer to these sections of the Code for the reason that appellant relies upon same for its position that it should have been permitted to call respondent as a hostile witness for the purpose of cross examination.

We can well appreciate the dilemma in which appellant found itself when, on account of certain other allegations in the pleadings not necessary to set out herein, it was announced that respondent was closing his case without going upon the witness stand; and with no previous decision of this Court directly on the issue as raised, so far as we have been able to learn, appellant used due caution in refusing to call the adverse party (respondent) as a witness, especially in view of the opinion of the Court in *Benbow v. Harvin*, 92 S. C., 180, 186, 187, 75 S. E., 414, 417, wherein it is stated: "While a party who calls his adversary as a witness makes him his witness to the same extent that he makes any other person whom he calls as a witness, still he is no more concluded by the testimony of his adversary than he would be by the testimony of any other witness whom he might call. But just as in the case of any other witness, having called him, he may not impeach him or contradict him; but he may prove the facts to be otherwise than as he testifies them to be." Of course, *the general rule* is that a party who offers a witness cannot impeach or discredit him, but there are some exceptions, as for instance, where the witness is not of the party's own selection, but is one whom the law obliges him to call, such as the subscribing witness to a deed or a will or the like. See *Jerkowski v. Marco*, 57 S. C., 402, 35 S. E., 750.

In *State v. Nelson*, 192 S. C., 422, 425, 426, 7 S. E. (2d), 72, 74, the general rule is stated as follows:

"It is a well-established rule of evidence that a party is not concluded by the unfavorable testimony of his own witness, but may prove his case by other evidence. He is not precluded from proving any facts relevant to the issue, by

any competent evidence, though it be a direct contradiction of the testimony of a former witness called by him. And, generally, when a witness is an unwilling one, or hostile to the party calling him, or stands in a situation which makes him necessarily adverse to such party, his examination in chief may be allowed to assume something of the form and character of cross examination, at least to the extent of permitting leading questions to be put to him. Justly limited, and rightfully applied, the rule is a wise and salutary one; but if not properly limited and employed it may be very unjust and mischievous. * * *"

While this Court should and does adhere to the general rule, yet under unusual circumstances such as existed in this case, had appellant called the respondent as a witness, we would be inclined to hold that it would have been permissible for the appellant to have contradicted and impeached such adverse party. We think the reasoning in a "Note," the subject of which reads: "Right of Party Who Calls Adverse Party as Witness to Impeach or Discredit His Testimony," found at pages 711 and 712, 6 A. & E. Ann. Cas., is sound. We quote therefrom:

"There are manifestly stronger reasons for permitting the contradiction and impeachment of a party who is called as a witness than of an ordinary witness. Thus it has been said: 'A party who produces a witness thereby vouches for his respectability of character and for his veracity, and therefore he shall not be allowed to show that he is unworthy of credit after he has been disappointed in his testimony. This rule can scarcely be said to be applicable to the parties themselves, because the very litigation between them and the points in issue are in dispute, and each denies to be true what the other says. The pleadings in almost every case brought down to trial prove the truth of this; and it would be hard indeed to believe that the party would go into the witness box when called by the opposite side and there state what he himself had before asserted was all untrue; and it would be harder still to hold that a party should be conclus-

ively bound by the statements made in his own favor, and that he should not be allowed to impeach, the party so examined. *Mair v. Culy,* 10 U. C. Q. B., 325. The testimony admitted in this case was merely contradictory and would have been competent as against any witness. In *Garny v. Katz,* 89 Wis., 230, 61 N. W., Rep., 762, it was said that the rule as to the holding out of the witness as one worthy of credit does not apply in its full rigor where the adversary party is the witness called. In *Webber v. Jackson,* 79 Mich., 175, 44 N. W., Rep., 591 [19 Am. St. Rep., 165], wherein the defendant, charged with having made a fraudulent conveyance, was made a witness by the plaintiff, it was said: 'It seems a little incongruous to claim that a party who puts a defendant on the stand for the express purpose of showing his fraud thereby gives him credit for honesty.' "

We are wandering from the direct issue before the Court. Did the trial Judge err in refusing to permit appellant to call respondent.(the adverse party) as a hostile witness for the purpose of cross examination? We can find no authority for such procedure and none has been cited us. The respondent was not a necessary witness to appellant's defense, nor was he one whom the law compelled it to call, and therefore this exception is overruled.

The second issue requires no extended discussion. The respondent had the right to rely on the legal presumption of the falsity of the defamatory matter until such presumption was overcome by testimony. In fact this was practically admitted by appellant in the argument before this Court, though the exception relating thereto was not abandoned.

Likewise, the third issue requires no extended discussion. We quote from appellant's printed brief:

"We herewith quote the exact language of plaintiff's only witness as to what was said by appellant's representative:

" 'In April, 1939, Mr. Lonas came to see me and told me it had been necessary to fire Mr. White as their manager on account of a large shortage of gasoline which had been re-

moved from cars or tanks at the station, and not only Mr. White used the gas for his own use, but for the use of other employees at the station. Q. He told you it had been necessary to fire him for the large shortage that had been brought about by whom? A. By Mr. White keeping gasoline not only for his use, but for the use of other employees at the station. Q. Did he tell from what source? A. Removed it from tank cars before it was run through the main.' (Folios 32 and 33.)"

Appellant argues that there being no proof that its agent ever used the words "steal," "embezzlement," or "breach of trust with fraudulent intent," and that only the word "shortage" was used, it was susceptible of two meanings, and that it was a question for the jury as to the charge meant, citing *Bosdell v. Dixie Stores Company*, 168 S. C., 520, 167 S. E., 834; *Campbell v. Life Insurance Company*, 155 S. C., 63, 152 S. E., 18; *Tucker v. Pure Oil Company*, 191 S. C., 60, 3 S. E. (2d), 547, and *Smith v. Smith*, 194 S. C., 247, 9 S. E. (2d), 584.

Had respondent's witness merely stated that the representative of appellant had told him that respondent was being fired on account of a large shortage, then the law as announced in the above cases would have been applicable, but the witness enlarged on this which showed a state of facts necessarily charging that respondent had either stolen the gasoline or was guilty of a breach of trust with fraudulent intent, either of which charged a crime.

The judgment appealed from is affirmed.

MESSRS. ASSOCIATE JUSTICES FISHBURNE and STUKES and MESSRS. ACTING ASSOCIATE JUSTICES L. D. LIDE and A. L. GASTON concur.