16282

SMITH v. HANNA *ET AL.*
(56 S. E. (2d) 339)

Mr. *Philip C. Stoll*, of Kingstree, *for Appellants,*

Messrs. *Wallace D. Connor*, of Kingstree, and *Samuel Want*, of Darlington, *for Respondent,*

Mr. *Philip C. Stoll,* of Kingstree, *for Appellants, in reply,*

November 15, 1949.

TAYLOR, Justice.

This appeal stems from an action brought by the respondent for the purpose of removing a cloud upon the title to certain property located in Williamsburg County. The complaint alleges as the first cause of action that the plaintiff is the owner in fee of the two tracts of land described in the complaint by virtue of deeds from one Mary J. Nesmith, but that the defendants claim some right, title or interest in said lands. For a second cause of action, that although sufficient notice had been given to the defendants, Anna Hanna and Mose Hanna, then residing on the ten acre tract, to quit said premises, the defendants had refused. The complaint prayed for judgment barring the defendants from claiming any right, title or interest in said lands, and for a writ of ejectment dispossessing the defendants, Anna Hanna and Mose Hanna, from that portion of the property then occupied by them.

In due time the defendants filed an answer in which they raised the question of title by way of three defenses, the first being that Mary J. Nesmith, through whom plaintiff claims title, had only a life estate with remainder to her children; second, that defendants, Anna Hanna and Mose Hanna, were the owners of the ten-acre tract by virtue of a parol gift from Mary J. Nesmith; third, that Mary J. Nesmith lacked the mental capacity to make the deeds through which plaintiff claims title and that such deeds were signed through fear and coercion.

Plaintiff moved before Hon. J. Woodrow Lewis for an order of reference, as a result of which the first and second

defenses were referred to Hon. R. E. Harrell as special referee, the third being left for trial by jury. The referee filed his report holding that the deed from Augustus Dicker, Sr. to Mary J. Nesmith, embracing all of the property in question, conveyed to her a fee conditional estate that issue being born after the execution and delivery of the deed, she could convey the fee and that her deeds to respondent conveyed to him the fee simple title to the lands in question; further, that there was no parol gift of the ten-acre tract to Anna Hanna and Mose Hanna, but that certain valuable improvements had been made on the lands by these defendants under the belief that such was theirs and that they were entitled to a lien for such improvements. Both appellant and respondent filed exceptions to this report, and Judge Lewis issued his order, dated March 11, 1949, affirming the report of the referee concerning the title to the property and the parol gift, but modified the report in that he refused to allow appellants a lien over the ten-acre tract for improvements and dismissed the third defense of the answer and issued his writ of ejectment against the defendants, Anna Hanna and Mose Hanna.

The respondent acquired his title from Mary J. Nesmith, who in turn had acquired her title from Augustus Dicker, dated December 21, 1911, and it is this latter deed with which the Court is concerned in determining whether or not there was vested in Mary J. Nesmith a fee simple title or whether or not, as contended by appellants, that she took only a life estate with remainder to her children in fee or that she and her children took the fee as tenants in common. The habendum clause in the deed in question is as follows: "to have and to hold all and singular the said premises before mentioned unto the said Mary J. Nesmith until her death and then to her bodily issue and heirs and assigns forever."

By the above, it is perceived that we have a deed conveying to Mary J. Nesmith a freehold estate (for life) and in

the same instrument a limitation by way of remainder of the freehold interest.

In 47 Am. Jur., page 792, we find the following:

· "When a person takes an estate of freehold, legally or equitably, under a deed, will, or other writing, and in the same instrument there is a limitation by way of remainder, either with or without the interposition of another estate, of an interest of the same legal or equitable quality, to his heirs or heirs of his body, as a class of persons to take in succession from generation to generation, the limitation to the heirs entitles the ancestor to the whole estate."

The statute abolishing the rule in *Shelley's case* in this state became effective as of October 1, 1924, while the deed in question was dated December 21, 1911. We will therefore consider the question of whether or not the rule in *Shelley's case* applies in this case. If the words "and then to her bodily issue and heirs and assigns forever" mean the same thing as the word "heirs" or "heirs of the body" as a class of persons to take in succession, Mary J. Nesmith obtained the whole estate. In *Antley v. Antley,* 132 S. C. 306, 128 S. E. 31, 32, a leading case in this state, the habendum clause in the deed involved was as follows:

"To have and to hold all and singular the said premises before mentioned from and after the death of myself, the said John A. Mack and Susan Mack, my wife, into the said Alice A. Mack, for and during the term of her natural life, and after her death to the bodily issue of the said Alice A. Mack who shall take *per stirpes,* and to the heirs and assigns of such bodily issue forever, provided, however, should said Alice A. Mack die leaving no bodily issue her surviving at the time of her death, then to such other of my children and the child or children of a deceased child or children as may be living at the time of the death of the said Alice A. Mack, the child or children of a deceased child to take the parent's share, and to their heirs and assigns forever."

In construing the above deed, this Court said:

"The use of the words 'heirs' or 'bodily issue' in a deed evinces conclusively the purpose and intention of the grantor to convey an estate in fee, either in fee simple or fee conditional as the language warrants; and hence any superadded words, such as 'for life,' 'for natural life,' to some other person 'after death' of the grantee, etc., are repugnant and void, as there may be no limitation upon the fee once granted. * * *

"It will be noted that the grant is to Alice Mack Antley and her 'bodily issue,' not her 'children,' and there is nothing whatsoever in the context to warrant changing the words 'bodily issue' to 'children.' The words 'bodily issue' differ in technical import from the term 'children.' * * *

"The proviso appearing at the end of the habendum clause reading, '* * * provided, however, that should said Alice A. Mack die leaving no bodily issue her surviving at the time of her death, then to such other of my children and the child or children of a deceased child or children as may be living at the time of the death of the said Alice A. Mack, the child or children of a deceased child to take the parent's share, and to their heirs and assigns forever,' cannot affect the fee conditional estate granted by the deed. Once the fee, whether fee simple or fee conditional, is granted subsequent or superadded words cannot cut down the estate."

In 29 L. R. A., N. S., page 1063, it is stated:

"The proper method of applying the rule in *Shelley's case* is this: Interpret the deed or will by the ordinary rules of construction, precisely as if this rule had no existence. Then, having ascertained the testator's intention, look at this rule, and see whether such intention conflicts with it; if it does, the rule must be applied, for it is absolute and has no exceptions."

The authorities hold in effect that although a conveyance describes in the habendum the estate granted to the first taker as a life estate with remainder to heirs, heirs of the

body or issue, any intention of the grantor deduced from the language used that the first taker is to get only a life estate is disregarded; in the absence of some specific language in the instrument indicating that the words of inheritance were not used in their technical sense but to describe particular individuals such as children or grandchildren, the application of the rule in *Shelley's case* is made arbitrary, disregarding the stated intention of the grantor.

"It is well settled that where the rule in *Shelley's case* is in force, it is a rule of property and not of construction, which may operate to defeat the intention of the grantor or testator. The rule is not a means to discover the intent of the grantor or testator, but supposing the intent ascertained, the rule controls it. Thus, the rule in *Shelley's case* has no place in the interpretation of the instrument, and takes effect only when the interpretation has been first ascertained. The rule was not designed to defeat the intention of the grantor or testator, but gave to certain words, as 'heirs,' such force and effect that when used they were conclusively presumed to show an intent to vest the estate in the ancestor, in fee. Theoretically, the rule was not applied to ascertain the intent of the grantor or testator, but to declare its effect, when ascertained. But when this is said, it should be understood as meaning that only the particular intent is sacrificed to the general or paramount intent. It is not the estate which the ancestor takes that is to be considered so much as it is the estate intended to be given to the heirs. Nevertheless, where the requisites occur, it will control the intention of the testator or grantor, and overrides his purpose, often very clearly expressed, to limit the ancestor to a life estate, as where the instrument provides specifically that the estate of the first taker is to be limited to a life estate, or is to be subject to all the incidents of a life estate, or that the heirs are to take as purchasers." 47 Am. Jur. p. 795.

Applying the aforesaid principles, the grant to Mary J. Nesmith for her lifetime "and then to her bodily issue" has

the same effect under the rule in *Shelley's case* as to one for life and then to her "heirs" or "heirs of the body." *Williams v. Gause,* 83 S. C. 265, 65 S. E. 241; *Sims v. Clayton,* 193 S. C. 98, 7 S. E. (2d) 724; *Blume v. Pearcy,* 204 S. C. 409, 29 S. E. (2d) 673. In the case of *Davis v. Strauss,* 173 S. C. 99, 174 S. E. 908, where the conveyance was to the grantor's son "for a period of his natural life, and from and after his death to his issue, and should any of his children predecease him, the children of a predeceased child shall take together the share to which the parent would have been entitled if living; to such issue as aforesaid, and their heirs and assigns 'forever'", this Court said:

"The question to be determined is whether the word 'issue' was used by Rebecca C. Davis, the grantor, in its technical sense as a word of limitation. If so, then James J. Davis took, under the rule in *Shelley's case,* a fee conditional estate which, upon the birth of issue ripened into a fee simple absolute for the purposes of alienation, forfeiture, or to charge. This is the contention of the respondents, and we think their position is sustained by the case of *Antley v. Antley,* 132 S. C. 306, 128 S. E. 31, 32."

In conformity with the foregoing, we are of the opinion that Mary J. Nesmith acquired a fee conditional estate which ripened into a fee simple absolute. There is an abundance of cases in this state to support this view, a full discussion of which will be found in 114 A. L. R. page 602. See also *Miller v. Graham,* 47 S. C. 288, 25 S. E. 165; *Hewitt v. Hewitt,* 187 S. C. 86, 196 S. E. 541.

Appellants further contend that a fee conditional estate can arise out of a conveyance such as the one in question only where children are born to the grantee subsequent to the making of the deed, and since no children were born to Mary J. Nesmith after the making of the Dicker deed, one of the incidents of a fee conditional estate is absent.

None of the many cases decided by this Court on the question of power of a fee conditional owner to convey the

property in fee simple have been based upon the fact that children were born to the grantee after taking title. *Davis v. Strauss, supra; Wright v. Herron,* 5 Rich. Eq., 441; Restatement of Law of Property, Vol. 1, p. 315. However, it is of no import in this case, as the record shows that at least one child and possibly two were born subsequent to the execution and delivery of the Dicker deed to Mary J. Nesmith.

Appellants, Anna Hanna and Mose Hanna, further contend that they are the beneficiaries of a gift by parol of the ten-acre tract. However, an examination of the record discloses that they were not able to substantiate this claim by the clear, cogent and convincing evidence necessary in such cases. *Samuel v. Young,* 214 S. C. 91, 51 S. E. (2d) 367; *Finklea v. Carolina Farms Co.,* 196 S. C. 466, 13 S. E. (2d) 596.

The same appellants further take the position that in the event that their claim that the ten-acre tract was given to them by Anna's mother, Mary J. Nesmith, is not sustained, they should be granted a lien for the cost of the house erected by them on the ten-acre tract. The concurrent finding of the Master and the Circuit Court Judge are to the effect that no such gift was made.

Evidence was introduced by appellants that they had expended the sum of one thousand dollars ($1,000.00) in erecting the dwelling house thereon, but none was introduced as to what extent, if any, the value of the land had been increased thereby, but respondents presented testimony that the house was in a state of disrepair and its value set at one hundred and fifty dollars ($150.00). In *Harman v. Harman,* 54 S. C. 100, 31 S. E. 881, 882, this Court said: "While a defendant may set up in his answer a claim for so much money as the land has been increased in value in consequence of improvements made thereon, he cannot set up as a defense the amount paid in erecting the improvements." The fact is, however, that the house was erected while the property was in the hands of Mary J. Nesmith.

Section 8836 of the 1942 Code of Laws of South Carolina provides that a defendant "who may have made improvements or betterments on such land, believing at the time he makes such improvements or betterments that his title thereto was good in fee, shall be allowed to set up in his answer a claim against the plaintiff for so much money as the land has been increased in value in consequence of the improvements so made; so, likewise, the defendant shall be allowed to set up a claim against the plaintiff for so much money as the land has been increased in value in consequence of improvements or betterments made by the person or persons under or through whom he claims, if it be shown that the defendant actually believes he was taking a good title, in fee simple, thereto, at the time of the alleged taking thereof."

The record is explicit that the small house built on the ten-acre tract was done so, not in the belief that their title thereto was good in fee, but rather that they did so under the expectancy of inheritance; therefore, this question must also be resolved against appellants.

Appellants further contend that, in the execution and delivery of the deeds in question, Mary J. Nesmith acted under coercion and lacked the mental capacity to make such deeds.

The Circuit Court Judge held in effect that in view of the conclusions that the respondent obtained a fee simple title to the lands in question and that there was no parol gift of the ten-acre tract to appellants, Anna Hanna and Mose Hanna, they, Anna Hanna and Mose Hanna, have no interest in the land and, therefore, have no legal or proprietary interest upon which to base an attack upon the validity of the conveyance made by Mary J. Nesmith, and with this we agree.

For the foregoing reasons, this Court is of the opinion that all excetpions should be dismissed and the judgment of the Circuit Court affirmed, and it is so ordered.

Judgment affirmed.

BAKER, C. J., and FISHBURNE, STUKES and OXNER, JJ., concur.