2547

Anna Williamson BARNWELL, Appellant v. Frank Henry BARNWELL
and The Frank Henry Barnwell Co., Inc., Respondents.

(476 S.E. (2d) 492)

Court of Appeals

*Doyet A. Early, III*, of *Early & Ness*, Bamberg, *for appellant.*

*Charles H. Williams*, of *Williams & Williams*, Orangeburg, *for respondents.*

Submitted June 4, 1996.

Filed July 15, 1996; Refiled Aug. 27, 1996.

*Per Curiam:*

After reviewing the Petition for Rehearing in this case, it is hereby ordered that the opinion heretofore filed be withdrawn and the attached opinion be substituted. The Petition for Rehearing is denied.

/s/ C. Tolbert Goolsby, Jr., J.
/s/ Ralph King Anderson, Jr., J.

I adhere to my original dissent as modified.

/s/ Jasper M. Cureton, J.

ANDERSON, Judge:

In this domestic relations action, Anna Williamson Barnwell (Wife) appeals the family court's order finding (1) the parties' marital residence, a house and lot titled to The Frank Henry

Barnwell Co., Inc. (Corporation), was not marital property subject to equitable distribution, (2) Wife was not entitled to an interest in the appreciation of the marital residence, and (3) corporation did not make a gift of house and lot to Husband and Wife. We reverse and remand.[1]

## FACTS

Wife and Frank Henry Barnwell (Husband) were married on July 17, 1971. On November 16, 1994, the parties were divorced. Prior to the divorce hearing, the parties reached an agreement concerning all issues except a determination of whether the marital residence constituted marital property subject to equitable distribution. The house and lot were titled in the name of the corporation owned by Husband's father, Henry Barnwell (Father).

On April 5, 1995, a hearing was held to resolve the issue of the house and lot. Wife and Father testified at the hearing. Wife testified she and Husband rented an apartment from 1971 until 1973. Wife stated that in 1972 she and Husband located a lot on which to build a home. After the parties inquired about financing, they approached Father for business advice. Wife testified Father told them he would like to give them $40,000 to build a house on the lot and put it in the name of the Corporation. Wife further testified the Father said, "there was no need for us to have to wait until something happened to him to enjoy it." She stated Father told them they didn't have to pay the money back, but that he wanted to give it to them. The lot was purchased by the Corporation for $4,000 in December of 1972.

Wife testified she and Husband chose the contractor and discussed the plans and specifications for the house. The couple selected lighting fixtures, finishes, and furnishings. Wife stated Father did not advise or interfere with the construction of the house. She and Husband worked with the contractor throughout the entire building process. Wife signed as the applicant for septic tank approval. Wife testified Father paid the contractor in the amount of $40,765.

Wife testified she and Husband paid Father $60 a month for

---

[1] Because oral argument would not aid the court in resolving the issues, we decide this case without oral argument.

a number of years. She stated the money was to help with the house, but she did not know if the money was used to help with taxes or what it was supposed to help with. Wife testified the couple paid for contents insurance, and she assumed the Corporation paid for the home insurance. She stated the Corporation paid for the taxes, but did not pay for anything else. Wife testified it bothered her and Husband that the house was not titled in their names. She testified that after Father realized this, in 1982 he started a director's fee from the Corporation for Husband so that the couple could have the house and lot put in their names. Wife testified they did not receive the director's fee. She stated Father told them that after ten years of this "paper transaction," the house would be titled in their names.

Wife testified Father on numerous occasions told them "it was our house to do with whatever we wanted to . . . just to do whatever we pleased with it. It was our house." Wife testified she and Husband made substantial improvements to the house and lot, consisting of:

(1) replacing carpet in den;
(2) replacing shingles and boards;
(3) deck and aboveground pool;
(4) brick walk;
(5) shrubbery;
(6) ceiling fixtures;
(7) repainted house;
(8) replaced central air conditioning;
(9) reroofed house;
(10) landscaped lot;
(11) wallpapered inside house.

Wife further testified the home was appraised for $92,000 or $97,000.

Father testified he was the sole stockholder in the Corporation and his son never had ownership in the Corporation. He stated the Corporation purchased the lot in order that his son and Wife could build a home. Father denied the purchase was made for business purposes. Father stated the home did not generate any income for the Corporation. Father testified the Corporation depreciated the house for business purposes.

Father stated he did not recall receiving any money for the house. He testified that in 1982 his son started receiving a di-

rector's fee from the Corporation, which he characterized as a "book transaction." He stated the director's fee was approximately $4,300, which was for rent. Father did not have a lease agreement with the couple. [R. 79] Father testified he did not expect them to repay the $40,000. He stated the house and lot was not a gift because he could not give them corporate property. Father testified the Corporation had paid insurance and taxes for the house. Father further testified he was aware of the improvements made to the property, and that the Corporation did not pay for any of them. He testified the house and lot were the only assets left that the Corporation owned. He testified the house and lot were part of his estate. Father further testified the house and lot were in an irrevocable trust for the benefit of his wife if she predeceased him, with the remainder of the assets divided between his daughter and his son's children.

By order dated April 18, 1995, the trial court found the house and lot were not marital property. The trial court found the house and lot did not constitute a gift. The trial court reasoned that Father denied the property was a gift, and Wife testified the couple had paid $60 a month, which was inconsistent with the property being a gift. Wife's motion for reconsideration was denied. This appeal followed.

## SCOPE OF REVIEW

In appeals from the family court, we have jurisdiction to find facts in accordance with our own view of the preponderance of the evidence. This broad scope of review, however, does not require us to disregard the findings of the lower court. *Stevenson v. Stevenson*, 276 S.C. 475, 279 S.E. (2d) 616 (1981). Neither are we required to ignore the fact that the trial judge, who saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony. *Cherry v. Thomasson*, 276 S.C. 524, 280 S.E. (2d) 541 (1981).

## ISSUES

(1) Was there a gift of house and lot to Husband and Wife by Corporation?
(2) Was the home and lot marital property subject to equitable distribution?

(3) Was Wife entitled to an interest in the appreciation of the marital residency?

## LAW/ANALYSIS

Husband and Wife acquired the lot in December of 1972, and subsequently built a house in 1973. It is undisputed Father's Corporation purchased the lot and paid for the construction of the house. Wife testified Father intended to give the couple the lot and house. However, Wife also testified the couple paid approximately $60 per month for a number of years to help with the house. Father testified it was not a gift because he could not give the couple corporate property.

In 1982, Husband began receiving, in the form of a "paper transaction," a director's fee from the Corporation in the amount of $4,300 or $4,600 per year. Wife testified Father told the couple that after ten years of this transaction, the house would be titled in their names. Husband did not perform any work for the Corporation; however, the Corporation received consideration in the form of the tax benefit of depreciation. Although Father testified the director's fee was for rent, he provided no lease agreement to support this claim. We find it incredible that Father allowed the couple to live rent free, and after ten years began collecting rent.

The couple, using their own funds, made numerous improvements to the property including landscaping, building a deck, adding a brick walk, and installing ceiling fixtures. Wife testified the house was recently appraised at approximately $92,000 or $97,000. The increased value indicates that an appreciable amount of marital funds were expended on these improvements. Additionally, the couple never asked Father for permission to make these improvements. The act of making improvements, coupled with Wife's testimony that she believed the property was the couple's and would eventually be titled in their names, constitutes overwhelming evidence of a gift. Without Husband's testimony, we find no evidence to contradict Wife's position that the house and lot constituted marital property.

Wife believed, from the inception, the marital residence was the couple's property. After 1982, Wife also believed she and Husband would eventually have the title to the property put in their names. As previously stated, the couple made sub-

stantial improvements to the property during the course of the marriage. The parties lived in the home for approximately 20 years.

## GIFT

### (1) *Burden of Proof*

Wife contends that her father-in-law purchased a lot and constructed a house thereon, promising to give the property, with improvements, to Husband and Wife.

In *Long v. Conroy*, 246 S.C. 225, 143 S.E. (2d) 459 (1965), our Supreme Court identified the party having the burden of proof in a case involving an alleged gift:

> The instruction that the burden of proof rested upon the defendants to prove the alleged gift was in accord with the general rule that the burden of establishing the fact of a gift is on the one who asserts it.

*Long*, 246 S.C. at 238, 143 S.E. (2d) at 466.

### (2) *Standard of Proof*

The standard of proof applicable in a case involving gift by parol of land is articulated in *Smith v. Hanna*, 215 S.C. 520, 56 S.E. (2d) 339 (1949):

> Appellants, Anna Hanna and Mose Hanna, further contend that they are the beneficiaries of a gift by parol of the ten-acre tract. However, an examination of the record discloses that they were not able to substantiate this claim by the clear, cogent and convincing evidence necessary in such cases.

*Smith*, 215 S.C. at 528, 56 S.E. (2d) at 342.

Enunciating the standard of proof with clarity is *Knight v. Stroud*, 214 S.C. 437, 53 S.E. (2d) 72 (1949):

> A parol gift of land can be established only by clear and convincing testimony, and unless possession of the land is delivered or taken *in pursuance of the gift* thereby taking such parol gift out of the statute of frauds, evidence of the parol gift is inadmissible. (Emphasis in original.)

*Knight*, 214 S.C. at 441, 53 S.E. (2d) at 73.

### (3) Elements of a Gift

The case of *Meyerson v. Malinow*, 231 S.C. 14, 97 S.E. (2d) 88 (1957), elucidates the law of a gift *inter vivos*:

In the case of *Sharpe v. Sharpe*, 105 S.C. 459, 90 S.E. 34, 35, 3 A.L.R. 891 this Court said:

"A gift *inter vivos* does not differ, in its essential elements, from a gift *causa mortis*, except that in the latter the survival of the donor may defeat the gift. (Citation omitted.)

"In every gift, like in well-nigh every human act, there exists two elements. One of these involves the intent of the donor's mind; the other of these involves the act of the donor's hand. If a donor intends to confer on another ownership of his property, and if he proceeds so far as to do it, then the gift is complete."

*Meyerson*, 231 S.C. at 25-26, 97 S.E. (2d) at 94.

The law relating to a parol gift of land is reviewed with methodicalness in *Knight v. Stroud*, 214 S.C. 437, 53 S.E. (2d) 72 (1949):

Even as to personal property, to constitute a gift, there must be an actual or constructive delivery of possession, so as to confer a right of present enjoyment. "If the donor delivers a chattel to one, to be taken possession of a year hence; this is nothing more than a voluntary undertaking to give it at that time, and cannot be enforced either as a gift, or as a contract." There can be no such thing as a parol gift commencing in futuro. (Citation omitted.)

Quoting from *Caldwell, Executor v. Williams et al.*, Bailey's Eq., 175: "It is hardly necessary to say, that a parol gift of land transfers no right. In general, evidence of such gift, is not admissible, although it has been received, in particular cases, to shew the character of the subsequent possession. Then, regarding it as an agreement to convey, which is sought to be enforced on the ground of part performance, no agreement can be enforced, either in law, or in equity, which is not founded on a consideration. * * *"

The prevailing doctrine, and the applicable law of this State, is stated as the general law in 24 Am. Jur., *Gifts*, Section 68, as follows:

"It is well settled that a conveyance of land to be valid at law must be by deed under seal, but in equity a good right and title may be given * * * by parol. * * * a parol gift of land is on the same footing as a parol sale of land, and in order to take a parol gift of land out of the statute of frauds possession must be taken in pursuance of the gift, and as a further condition to the consummation of the equitable right and title, the donee must have made improvements of a valuable and permanent character, induced thereto by the promise to give the land. When these conditions and considerations have followed, the performance of the promise, although by parol, can be enforced in equity, and the donee becomes entitled to specific performance. * * * The right to specific performance, after going upon the land and making improvements, is especially favored in the case of a parol gift from a parent to a child.

"Mere possession and the making of some improvements, however, do not dispense with the necessity of producing distinct proof of the principal fact—that is that there was a gift. Even if there actually has been a gift, the donee is not entitled to the aid of equity when the improvements are slight and not of permanent value."

A similar statement of the law governing the enforcement in equity of a parol gift of land will be found in 38 C.J.S., *Gifts*, § 57.

Of course, the necessity of proving the making of valuable and permanent improvements on the land in reliance upon the gift is more in the nature of equitable estoppel.

*Knight*, 214 S.C. at 441-42, 53 S.E. (2d) at 73-74.

*Knight* is applied in *Brevard v. Fortune*, 221 S.C. 117, 69 S.E. (2d) 355 (1952):

In fact, a parol gift of land does not and cannot ipso facto transfer the title to the land, but it is well recognized that there are two methods whereby under certain conditions a parol gift may become effective. One of these, which we think in applicable here, is to the effect that where the donee pursuant to a parol gift takes possession of the land the same may ripen into a perfect title by adverse possession for the statutory period. There is, however, another

method sometimes available, and that is a decree for specific performance of a parol gift, provided there is sufficient partial performance to take the case out of the Statute of Frauds, such as, full possession thereunder and the making of permanent and valuable improvements to the property. . . .

*Brevard*, 221 S.C. at 125-26, 69 S.E. (2d) at 358-59.

The efficacy of a gift *inter vivos* is penned in *Lynch v. ▮▮▮ Lynch*, 201 S.C. 130, 21 S.E. (2d) 569 (1942):

The following, which is quoted with approval in the case of *Ott v. Ott*, 182 S.C. 135, 188 S.E. 789, 792, is an accurate statement of the essential elements of a gift *inter vivos:*

" 'A gift *inter vivos* as its name imports, is a gift between the living. It is a contract which takes place by the mutual consent of the giver, who divests himself of the thing given in order to transmit the title of it to the donee gratuitously, and the donee who accepts and acquires the legal title to it. It operates, if at all, in the donor's lifetime, immediately and irrevocably; it is a gift executed; no further action of the parties; no contingency of death, or otherwise, is necessary to give it effect.' 28 C.J. 621, 622."

As will appear from the foregoing quotation, a gift to be operative must be executed and must take effect immediately and irrevocably, for the obvious reason that if anything remains to be done the title to the property does not pass, and an executory agreement to make a gift could not be enforced, for the same is gratuitous and without any valuable consideration. As is said in 24 American Jurisprudence 741:

"* * * Thus, mere intention to give without delivery is unavailing; the intention must be executed by a complete and unconditional delivery.

"In other words, to have the effect of a valid gift *inter vivos*, the transfer of possession and title must be absolute and go into immediate effect, so far as the donor can make it so by intent and delivery. It must be so complete that if the donor again resumes control over the property, without the consent of the donee, he will become liable as a trespasser."

*Lynch,* 201 S.C. at 136-37, 21 S.E. (2d) at 572.

Encapsulating the law of gifts is *Baptist Found. for* ▉ *Christian Educ. v. Baptist College,* 282 S.C. 53, 317 S.E. (2d) 453 (Ct. App. 1984):

A gift is a voluntary transfer of property by one to another without any consideration or compensation therefor. An *inter vivos* gift is a contract between the living which takes place by the mutual consent of the donor, who divests himself of the property given in order to transmit the title to it to the donee gratuitously, and the donee, who accepts and acquires legal title thereto. It operates, if at all, in the donor's lifetime, immediately and irrevocably. The mere intention to give without delivery is unavailing, the intention must be executed by a complete and unconditional delivery. The transfer of possession and title must be absolute and go into immediate effect, so far as the donor can make it so by intent and delivery. To constitute a valid gift, the donee must have an immediate right to the property; in other words, the donee must be vested with immediate dominion and control.

\*   \*   \*   \*   \*   \*

If a donor intends to confer on another ownership of his property, and if he proceeds so far as to do it, then the gift is complete. . . .

In determining the intent with which a transfer of property is made, the testimony of the transferor cannot override the written statement of his intentions in terms of probative value. Mere improvidence is not sufficient to invalidate a donation. (Citations omitted.)

*Baptist Found.,* 282 S.C. at 58-59, 317 S.E. (2d) at 457.

Based on our review of the record *as presently constituted,* we find Wife substantiated her claim of gift by clear, cogent, and convincing evidence. The intent of Father to make a gift of the house and lot is demonstrated with clarity. Wife met her burden of proof by establishing a gift of the property.

## CONCLUSION

We reverse the order of the family court judge granting a directed verdict to the defendants and remand for a complete hearing on the issue of gift of the house and lot. On remand

the family court judge shall consider the record as presently constituted and shall allow further testimony by the defendants. The plaintiff shall have the right to present proper reply testimony.

Accordingly, the decision of the family court judge is

Reversed and remanded.

GOOLSBY, J., concurs.

CURETON, J., dissents in a separate opinion.

CURETON, Judge (dissenting):

I disagree with the majority that the wife has sustained her burden of showing the marital residence was a gift from her father-in-law (respondent) to her and her ex-husband (Frank). As a preliminary matter, I note this is not a case where the wife's evidence conflicts with the respondent's evidence, because the wife presented the respondent's testimony in her case in chief.[1] Therefore, she may not at this point impeach his testimony or disavow it. *White v. Southern Oil Stores, Inc.,* 198 S.C. 173, 17 S.E. (2d) 150 (1941). It is also worth observing that the wife testified about an open adulterous relationship she carried on during the marriage and that she exposed the parties' minor children to her paramour. This evidence may well have adversely impacted her credibility in the mind of the trial judge.

The majority opinion does not make it clear when the gift from the respondent to the marriage took place. As noted by the majority, a parol gift of land must be proved by clear and convincing evidence, and possession must be taken pursuant to the gift. In other words, a gift of land cannot be made to take effect in the future. *Knight v. Stroud,* 214 S.C. 437, 53 S.E. (2d) 72 (1949). A parol gift of land stands on the same footing as a parol sale of land. *Id.* It is settled law that a parol gift of land does not transfer title to the land. *Brevard v. Fortune,* 221 S.C. 117, 124, 69 S.E. (2d) 355, 358-359 (952). However, a donee may seek specific performance of a promise to convey land if he an show sufficient partial performance, such

---

[1] After the wife testified and presented the testimony of the respondent, she rested her case. The respondent then moved for a nonsuit which was granted.

as exercising possession of the property and making valuable improvements thereto so as to take the case out of the statute of frauds. *Id*. Nevertheless, the improvements must be both valuable and of a permanent character and the donee must have been "induced thereto by the promise to give the land." *Knight v. Stroud*, 214 S.C. at 441-42, 53 S.E. (2d) at 73-74.

It appears that the majority premises its finding that the parties made substantial improvements to the land on the wife's testimony regarding several improvements to the marital residence, including: adding a deck and above-ground swimming pool; reroofing the house; replacing central air conditioning; landscaping the lot; repainting the house; replacing carpet in the den; replacing boards; wallpapering a bathroom; replacing some light fixtures; and laying a brick walk. The wife never testified as to: when these improvements were made (except for the pool which was installed in 1987 or 1988); their value (except for the pool which cost $1,500); the permanency of their affixation; or that they were made in reliance upon the respondent's promise to make a gift of the house to the marriage. It is clear from the wife's testimony that many of the items she characterized as improvements to the land were simply efforts to maintain the marital residence.

Although the wife stated the respondent told her several times the house belonged to her and Frank, she explained that when she and Frank attempted to get a loan, and discovered they could not, they approached the respondent for advice. The respondent told them that he "would like to give us the money—forty thousand dollars ($40,000) to build the house and *have it in the company*." (Emphasis added). When asked what arrangements were made to repay the $40,000 to the respondent, the wife stated, "I think initially we paid him maybe sixty dollars ($60.00) a month to help with taxes, or what it was supposed to help with but it was to help with the house."

The record reflects that in 1972 and 1973 the respondent corporation paid for the house and lot and titled the lot in its name, and afterwards paid both the real estate taxes and fire insurance on the house.[2] Thereafter, according to the wife, the fact the house was not in her and Frank's name "was a con-

---

[2] While the wife testified she and Frank paid the respondent $60.00 per month for several years, the respondent denied such payments. Also, the wife did not know why the payments were stopped.

stant source of irritation for us, for both of us." She then testified that after the respondent "realized that it bothered us quite a bit . . . he started the director's fees or whatever so that we could have it put in our names. It was something to do with there would be a large tax or something."

As to the 1982 transaction whereby the corporation began to pay Frank a director's fee, the wife seems to suggest that the purpose of that arrangement was to permit her and Frank to buy the house. The respondent testified that prior to 1982, his corporation has depreciated the home, but he was informed by his tax advisor that the IRS would not permit the depreciation unless the property generated income. As a result, the respondent and his tax advisor arranged to pay Frank a director's fee which would be retuned to the corporation as rent from Frank so as to legitimate the depreciation of the house. I will make no judgment as to the appropriateness of such an arrangement, but the respondent's testimony fully explains the reason for the arrangement, which I do not find to be incredible. Moreover, the wife acquiesced in the arrangement. Finally, the fact the house has doubled in value over more than twenty years supplies no proof of the value of the improvements. As to the pool, the respondent disputes it is a permanent improvement. Furthermore, it was installed at least 15 years after the alleged 1972 gift of the lot.

Rather than support the wife's claim of a gift, the 1982 transaction militates against a gift. If the wife and Frank seriously thought the respondent had given them the house in 1973, then she has shown no good reason why they would have acquiesced in an arrangement in 1982 to obtain title to the house rather than insisting that title be conveyed to them. Certainly, the wife and Frank did not go into possession of the property in 1982 in pursuance of a promise of a gift by the respondent to them. Thus, the wife has utterly failed to demonstrate a gift of the property to the marriage in 1982. Finally, it is incredible that the wife and Frank would agonize for ten years over the fact that the house was not in their names, then enter into the 1982 agreement to obtain title without obtaining something in writing from the respondent. In the final analysis, it is always a question of fact to be determined under under all the circumstances whether a gift was intended or not. *McCluney v. Lockhart*, 15 S.C.L. (4 McCord) 251 (1827).

As a final note, the circumstances here do not involve the situation one might envision of an ex-husband and his father teaming up to deprive the wife of her rightful interest in marital property. First, the house has always been owned by the respondent corporation and the wife has not shown the respondent satisfied the legal requirements of giving corporate property away. Secondly, the respondent testified the corporation's stock is in an irrevocable trust for the benefit of his wife who is a patient in a nursing home at the cost of over $3,000 per month. There is no indication of when the stock was placed in the trust or that it was placed there to avoid the consequences of the alleged gift. The respondent further testified that the trust provides that upon his wife's death, the remainder would go jointly to his daughter and the wife's and Frank's children. I would thus conclude the wife's evidence is neither clear nor convincing that the respondent ever intended to make a gift of the house to the marriage or that the improvements made were substantial, permanent and in pursuance of the gift. I would affirm the order of the trial court.