17265

M. W. MEYERSON, As Executor of the Will of Sadie Malinow, deceased, Respondent-Appellant, v. IRVIN BROWN MALINOW and STANLEY D. MALINOW, Individually and as Trustees under the Will of Mayer Malinow, and Southern Iron & Metal Company, Inc., Appellants-Respondents.

(97 S. E. (2d) 88)

16

*Messrs. Holcombe & Bomar* and *Thomas W. Whiteside,* of Spartanburg, *for Appellants,*

*Chester D. Ward, Jr., Esq.,* of Spartanburg, *for Respondent,*

March 4, 1957.

Moss, Justice.

The record shows that Mrs. Sadie Malinow and Mayer Malinow were married on December 14, 1939, and lived together as husband and wife until his death on January 21, 1950. For a few years after their marriage the parties lived in a home on Mills Avenue. In 1942 they built a much nicer home on Otis Boulevard. At the time of the construction of the new home, Mrs. Malinow paid for the lot, taking title in her name. It does not appear from the record how much each contributed to the construction of this residence or for the fixtures and furnishings therein. It does appear that it was necessary for them to obtain a construction loan with the Liberty Life Insurance Company. The record reveals that the loan was for a period of fifteen years, with monthly payments amounting to $71.

It also appears that at one time Mayer Malinow owned the full and complete capital stock of Southern Iron & Metal Company, but prior to his death he had given to his two sons, David Malinow and Irvin Brown Malinow, two-thirds of the capital stock of said corporation, and at the time of his death Mayer Malinow owned a one-third of the said capital stock.

Mayer Malinow died testate, and by the terms of Item 2 of his will, he provided as follows:

"I give and bequeath unto my two sons, Stanley David Malinow and Irvin Brown Malinow, in equal shares, all the capital stock of Southern Iron & Metal Company, Inc., which I may own at my death. As a charge upon such stock (but upon no other asset of my estate), I direct that my said sons pay to my wife, Sadie Malinow, or cause to be paid to her by Southern Iron & Metal Company, Inc., the sum of Fifty ($50.00) Dollars a week accumulated from my death, as long, during her life or widowhood, as she shall reside in Spartanburg County. No duty or responsibility with respect to the making of these payments to my wife is

placed upon my executors as such, it being my. expressed intention to confine this obligation personally to my sons against whose bequest of stock it is made a charge. No other provision is made for my wife in this Will, for the reason that I have heretofore given her a residence on Otis Boulevard in Spartanburg."

David Malinow and Irvin Brown Malinow are sons of Mayer Malinow by a previous marriage. Hence, they are the stepsons of Mrs. Sadie Malinow. It appears that these two sons, pursuant to the terms of the Will of Mayer Malinow, received one-third of the capital stock of Southern Iron & Metal Company, Inc., thereby giving them, share and share alike, full ownership of all the capital stock of the corporation. It is admitted that from the date of the death of Mayer Malinow until March 26, 1955, that these two sons carried out the terms of Item 2 of the aforesaid Will, by paying to their stepmother, Mrs. Sadie Malinow, the sum of $50 per week.

This action was commenced on May 16, 1955, by Mrs. Sadie Malinow, against her two stepsons, Irvin Brown Malinow and Stanley David Malinow, individually and as Trustees under the will of her husband, Mayer Malinow, deceased, and the Southern Iron & Metal Company, a corporation, wherein she sought the aid of the Court in requiring the said parties to resume the payment to her of the weekly sum of $50, which they had refused to pay after March 26, 1955. She also demanded that a receiver be appointed for the corporation to assure the continuation of the payments; to collect from the defendants a reasonable attorney's fee; and to recover actual and punitive damages for the defendants' failure to continue the weekly payments.

The defendants, who are appellants here, filed an Answer which is essentially a general denial. By way of setoff and counterclaim, they asserted claims against Mrs. Sadie Malinow totalling $16,544.50, which said amount the defendants assert that they advanced to her, or paid to others, at her request, for the plaintiff's use and benefit. The defendants

also assert that they are entitled to setoff the sum so paid and advanced by them against the sums which Mrs. Malinow is entitled to under the will. Mrs. Sadie Malinow plead a general denial to the defendants' counterclaim.

This action was, by consent of all parties, referred to the Master of Spartanburg County for the purpose of taking the testimony and reporting his findings of fact and law. He held three references, and on December 12, 1955, filed his Report in which he recommended that judgment be rendered in favor of Mrs. Sadie Malinow in the amount of $1,900, representing the arrearages in weekly payments. He denied the defendants' setoff and counterclaim on the ground that these sums were gifts to the said Mrs. Sadie Malinow and did not constitute a debt by her to the defendants. He also recommended that the claim for reasonable attorney fees be denied and that the cause of action for actual and punitive damages for the defendants' failure to continue the weekly payments be dismissed on the ground that no fiduciary relationship existed between the parties, for a breach of which the defendants would be liable in tort.

The Report of the Master, to which exceptions were taken by all parties, was confirmed by a Decree of the Honorable Charles M. Pace, Judge of the Spartanburg County Court. From this Decree all parties have appealed to this Court.

Mrs. Sadie Malinow, plaintiff in the action as it originated, died during the pendency of this action, and the executor of her will, M. W. Meyerson, was duly substituted as a party in her stead. However, the record shows that Mrs. Malinow had testified at the references held by the Master.

Irvin Brown Malinow and Stanley D. Malinow assert by their appeal that the trial Judge was in error in holding that the items constituting the account of $16,544.50 were gifts and not loans. M. W. Meyerson, as executor of the will of Mrs. Sadie Malinow, appeals on the ground that the trial Judge erred in dismissing the cause of action for actual and punitive damages because a fiduciary relationship ex-

isted between the parties, rendering Irvin B. Malinow and Stanley D. Malinow liable for such damages, because of their willful, arbitrary and capricious manner in refusing to carry out their duties and obligations under the will of Mayer Malinow.

The parties to this action were not in agreement as to whether the action was legal or equitable in nature. However, the County Judge held that the action was an equitable one and that he had a right to review the record on exceptions from the Master's Report. There is no exception challenging this holding of the lower Court. Therefore, the County Judge's ruling became the law of the case and this Court is bound by it. *Mellette v. Atlantic Coast Line R. Co.,* 181 S. C. 62, 186 S. E. 545; *Erwin v. Patterson,* 229 S. C. 188, 92 S. E. (2d) 464; *Davis v. Palmetto Quarries Co.,* 212 S. C. 496, 48 S. E. (2d) 329. Therefore, we must consider this action as properly being one of an equitable nature.

As is heretofore stated, the Master and the County Judge concurred in a finding of fact that the advances made by Irvin B. Malinow and Stanley D. Malinow to, or in behalf of, Mrs. Sadie Malinow were gifts. This being true we are bound by the rule that in an equity case the findings of fact by a Master and concurred in by the County Judge are conclusive upon this Court and will not be disturbed unless it is shown that such findings are without any evidence to support them or are against the clear preponderance of the evidence. *Newton v. Batson,* 223 S. C. 545, 77 S. E. (2d) 212; *Archambault v. Sprouse,* 218 S. C. 500, 63 S. E. (2d) 459; *Dean v. Dean,* 229 S. C. 430, 93 S. E. (2d) 206.

The evidence taken by the Master is in direct conflict. It appears that Mrs. Sadie Malinow, at the time of the death of her husband, was living in comparative luxury for one in her station in life. She owned a nice home, had a maid, a car, and upon the death of her husband she was greatly concerned when she learned that she had been left only $50

per week. It appears also that Mayer Malinow was buried in Baltimore, Maryland, and that at the Emerson Hotel, just after Mayer Malinow's funeral, that there was a discussion as to what would happen to Mrs. Malinow. Mrs. Goldstein, a sister of Mrs. Malinow, testified:

"We were in the hotel in her room and my sister was crying and very much upset and they (Irvin and Stanley) walked over to my sister and said, 'Aunt Sadie, don't cry, you have nothing to worry about, everything is going on like Daddy was alive'."

Another sister of Mrs. Sadie Malinow testified that shortly after the death of Mayer Malinow that she was in Spartanburg, South Carolina, when a discussion took place between Irvin and Stanley Malinow and Mrs. Sadie Malinow. It was stated that she had ordered two silver platters from New York and that she would have to send them back. It was testified that Stanley said: "Don't send them back. I want to run this house like Dad did." There is also the admission that one of the defendants expressed the intention to and did buy Mrs. Malinow a set of draperies, they gave her a tank of oil, a month's vacation in the mountains, paid one-half cost of refrigerator repairs, paid the difference in a trade-in on a television set, paid $15 per month in order to pay the cook. It was testified by Mrs. Horowitz, a daughter of Mrs. Sadie Malinow, that Stanley Malinow told her that he would pay the entire cost of a cottage in Hendersonville for Mrs. Sadie Malinow, it being his suggestion that Mrs. Malinow and Mrs. Horowitz find a place in the mountains for a month. Connected with this is a quote by this witness that Stanley said, in response to a statement by Mrs. Malinow that she could not afford it, "I'll pay it Aunt Sadie—it will not cost you a cent." It was also testified that Stanley Malinow suggested that his stepmother go to New York for a vist and that he would give her the trip, and that Stanley paid all the hotel bills and expenses of the trip. There was the testimony of Mrs. Horowitz that Irvin Malinow paid the utility bills and also the monthly payments of the

house mortgage. The sister, Mrs. Goldstein, testified that Stanley Malinow told her: "I would like for Aunt Sadie to go to Florida and I will send you with her and a colored man with the car." It was testified that Mrs. Goldstein replied that neither she nor Mrs. Malinow could afford the expense and that Stanley said: "I will pay all the expenses— I think it would do her a lot of good." It was testified in this connection that because of her health, Mrs. Malinow could not make the trip to Florida and the $200 deposit which Stanley Malinow had sent to Florida was returned to him.

Another witness, Mrs. Helen Pollock, a stepdaughter of Mrs. Malinow, corroborates Mrs. Goldstein's testimony with respect to the proposed trip of Mrs. Malinow to Florida. She testified also that on a visit to the Malinow home, while Irvin Malinow was living there with his child, that she went to see Irvin and Stanley Malinow at their office concerning Mrs. Malinow's financial affairs, all of which was unknown to Mrs. Malinow. She testified that she told them something would have to be done about the upkeep of the house, that there was not enough money for the household and to take care of the personal needs of her mother. According to Mrs. Pollock's testimony, this meeting took place in January, 1955, and that she told Irvin and Stanley Malinow that she did not like to ask them for anything else since they had given Mrs. Malinow "far beyond the call of duty." To which Stanley and Irvin both said: "Please, Helen, there are no thanks necessary, it is our moral duty."

Mrs. Sybil Troy, a stepdaughter of Mrs. Malinow, testified that she told her stepmother, in the presence of Irvin and Stanley Malinow, that she did not see how Mrs. Malinow was going to be able to live on $50 per week, and suggested that she come to New York and live with her, or to Washington to live with Lucille (Mrs. Horowitz). It was testified that Irvin Malinow, in reply to this statement, said: "Don't worry about that, Aunt Sadie, if necessary we will sign a waiver if you want to move away from Spartanburg County." Mrs. Troy then said that Mrs. Malinow could rent

the entire house and get the income from it; whereupon, Stanley Malinow replied: "That this was not necessary, she will go on living here and everything will go on the same as when Dad was alive."

We come now to the testimony of Mrs. Sadie Malinow. She testified that since the death of her husband that she had not remarried and had continuously lived in Spartanburg County. Upon the issue of whether the sums advanced by Irvin and Stanley Malinow were gifts or loans, we quote from her testimony:

"Q. Taking the time of the death of your husband, since that day have you ever requested either Stanley or Irvin Malinow or the Southern Iron & Metal Company, Inc., to give you any money or make any payments on your behalf? A. No.

"Q. Did they offer to make you any gifts? A. Yes.

"Q. Under what circumstances did they offer to make you gifts? A. They paid the mortgage on the house.

"Q. Starting when? A. I don't know exactly the date but I think it was when Louie Malinow visited Spartanburg, that was the time they started to pay the Seventy ($70.00) Dollars on the house.

"Q. Do you have a record to show that? A. Yes, I have a receipt for the exact date.

"Q. What were the circumstances under which Irvin Malinow offered to make the payments for you? A. we were talking about the Fifty ($50.00) Dollars that Dad had provided for me and at the first they both made the statement that they would give me an extra Fifty ($50.00) Dollars and that never came around. They both said Dad provided Fifty Dollars for you and we will give you Fifty more and not only that we are going to continue running the house the way he expected the boys to do.

"Q. You didn't ask them to do it for you? A. No.

"Q. Ever since the death of your husband it has been voluntary on their part? A. Yes."

At another place in the testimony, Mrs. Malinow testified: " * * * The only money I got from them was gifts that they gave me." Throughout the testimony of this witness she emphatically states that she never at any time borrowed any money from Stanley and Irvin Malinow or the Southern Iron & Metal Company, Inc., for the purpose of paying her debts and expenses. She testified that all that she received were gifts.

Irvin Malinow and Stanley Malinow testified that all sums advanced to, or in behalf of Mrs. Sadie Malinow, were loans and were charged on the books of Southern Iron & Metal Company, Inc., as such. However, there was also charged in the same account as being an indebtedness of Mrs. Sadie Malinow to the corporation, the sum of $50 per week required to be paid under the terms of the will of Mayer Malinow. There is no satisfactory explanation of why such charges were so made. It was testified on behalf of Stanley and Irvin Malinow that Mrs. Sadie Malinow requested that the sums paid to her under the terms of her husband's will, should be charged as loans on the books of the corporation, thereby she would not be required to pay income tax on them. Mrs. Malinow denied this. The impact of this testimony is that the parties had entered into a conspiracy to defraud the government of income tax on the amount paid to Mrs. Malinow.

It was testified by Irvin Malinow that Mrs. Sadie Malinow executed to Southern Iron & Metal Company, Inc., her note in the sum of $10,000 representing indebtedness owing by Mrs. Sadie Malinow to the corporation, by reason of the advancements made to her or in her behalf, and that they sought to renew this indebtedness and to increase it by taking another note from her for $15,000. It was testified that she never executed this note, and that the $10,000 note was left in her bedroom at the time of the request for the execution of the note for $15,000. It was testified that while the matter was under discussion, that Mrs. Malinow became ill and had to go to the bathroom, and that the exe-

cuted note and the proposed new note were never seen again. Mrs. Malinow specifically denied all of this.

The Master found as a fact that the records of the Company were not worthy of belief and the method of handling of the account discredits the facts to the extent that no credence could be placed on the entries there made. The Master likewise held that he could not believe the defendants' version of their dealings with their stepmother. He found also that after considering all of the evidence and testimony of Irvin B. and Stanley D. Malinow that he could not believe their testimony. In other words, he resolved the conflict in the evidence in favor of Mrs. Sadie Malinow. There is evidence to sustain his findings.

It is well to here observe that the Master saw the witnesses, heard the testimony delivered from the stand, and had the benefit of that personal observation of and contact with the parties, which is of a peculiar value in arriving at a correct result in a case of this kind. *Karres v. Pappas,* 194 S. C. 512, 10 S. E. (2d) 15; *Badder v. Saleeby,* 131 S. C. 101, 126 S. E. 438.

Having found that the Master's conclusions on the facts are supported by the evidence, and his conclusions having been concurred in by the County Judge, we cannot disturb such finding.

In the case of *Sharpe v. Sharpe,* 105 S. C. 459, 90 S. E. 34, 35, 3 A. L. R. 891, this Court said:

"A gift *inter vivos* does not differ, in its essential elements, from a gift *causa mortis,* except that in the latter the survival of the donor may defeat the gift. *Hall v. Howard*[*'s Adm'rs*], [24 S. C. L. 310, 314], [310], 314, 33 Am. Dec. 115.

"In every gift, like in well-nigh every human act, there exists two elements. One of these involves the intent of the donor's mind; the other of these involves the act of the donor's hand. If a donor intends to confer on another owner-

ship of his property, and if he proceeds so far as to do it, then the gift is complete."

The Master has found that the moneys advanced by Irvin and Stanley Malinow were gifts to Mrs. Sadie Malinow. This conclusion of the Master, concurred in by the County Judge, finds support in the evidence.

The other question for decision is whether or not a fiduciary relationship existed between Mrs. Sadie Malinow and Irvin B. and Stanley D. Malinow because of Item 2 of the Will of Mayer Malinow. This Item of the will directs the payment of $50 per week to Mrs. Sadie Malinow during her life or widowhood. The will then provides:

"No duty or responsibility with respect to the making of these payments to my wife is placed upon my executors as such, it being my expressed intention to confine this obligation personally to my sons against whose bequest of stock it is made a charge."

The foregoing provisions of the will imposed a personal liability on Irvin and Stanley Malinow to pay the sum of $50 per week to Mrs. Sadie Malinow, and made it a charge against the shares of capital stock of Southern Iron & Metal Company, Inc., which was owned by Mayer Malinow at his death, and which he bequeathed to his two sons. No trust or fiduciary relationship is set up under the terms of the will, but by acceptance of the bequest Irvin and Stanley Malinow became personally liable for the payment of the sum of $50 per week to Mrs. Sadie Malinow.

In the case of *Shired v. Nesbit,* 90 S. C. 20, 72 S. E. 545, 546, the testator left a will in which he devised his property to his two sons and provided that these sons should take care of his wife and permit her to occupy the home. She left the home, and upon failure of the sons to provide for her support, this action was instituted. The sons had received and accepted the devise of the real estate. The Court, in holding the sons liable for the support of the testator's widow, had this to say:

"The rule is that one who accepts a devise coupled with an obligation binds himself by his acceptance of the devise to discharge the obligation. *Porter v. Jackson,* 95 Ind. 210,. 84 Am. St. Rep. 704; *Dodge v. Manning,* 11 Paige (N. Y.) 334; *Steele v. Korn,* 137 Wis. 51, 118 N. W. 207, 120 N. W. 261; *Case v. Hall,* 52 Ohio St. 24, 38 N. E. 618, 25· L. R. A. 766; *Davidson v. Conn,* 125 Ind. 497, 25 N. E. 601, 9 L. R. A. 584, and note; 2 Jarman on Wills 584. Hence, when the sons accepted the devise, they assumed the· personal obligation to take care of the widow during her life, and the plaintiff is entitled to a judgment against them for· the aggregate arising from an allowance of a reasonable sum for each year's support."

In 57 Am. Jur., Wills, para. 1494, at page 1010, it is said :·

"Although there is some authority indicating that the· acceptance of a devise which is given 'subject' to the payment of a legacy, as distinguished from a devise containing an express direction to pay a legacy, does not impose any personal liability on the devisee with respect to such payment, and while there are early cases in some jurisdictions— which are of doubtful authority today—indicating that acceptance of a devise charged with payment of a legacy does not impose a personal liability on the devisee in the absence of an express promise by him to pay the charge, the weight of modern authority supports the conclusion that when a devisee accepts lands which have been charged with a legacy, he becomes personally liable for the payment thereof,. unless, of course, the language of the will negatives any testatorial intention to charge the devisee personally. This rule, it has been said, rests upon the reasonable principle that he who takes a benefit under a will must take it subject to its provisions, so that the acceptance of the devise imports a promise to pay the legacy."

See also the annotation in 116 A. L. R., at page 7.

The Will of Mayer Malinow set up an equitable charge on a legacy. It did not create a trust. A trustee is one who·

is liable to the beneficiary to the extent of trust property. It is clear in this case that Irvin and Stanley Malinow were obligated to pay the sum of $50 per week to Mrs. Sadie Malinow, independent of what might be the value of the shares of capital stock of Southern Iron & Metal Company, Inc., bequeathed by him to his sons. Therefore, they were not trustees but were obligated personally.

It is said in Am. Law Inst. Restatement, Trust, Vol. I, paragraph 10, that there is no fiduciary relationship between a holder of property subject to an equitable charge and the equitable encumbrancer.

We conclude that the Master and the County Judge were correct in holding that no fiduciary relationship existed under the facts of this case.

The judgment of the lower Court is affirmed.

STUKES, C. J., TAYLOR and OXNER, JJ., and G. DUNCAN BELLINGER, A. A. J., concur.