0172

BAPTIST FOUNDATION FOR CHRISTIAN EDUCATION, Respondent, v. BAPTIST COLLEGE AT CHARLESTON, Appellant.

(317 S. E. (2d) 453)

Court of Appeals

54

*Bailey & Buckley,* Charleston, *for appellant.*

*Solomon, Kahn, Smith & Baumil,* Charleston, *for respondent.*

Heard Feb. 21, 1984,

Decided May 14, 1984.

SHAW, Judge:

This is an appeal from a decision of the Master in Equity of Charleston County. The respondent — Baptist Foundation for Christian Education (the Foundation) seeks to recover a fund of $259,076.88 plus interest that was transferred to the appellant — Baptist College of Charleston (the College) in 1973. The Master imposed a constructive trust on the fund, awarded $112,628.48 in interest and ordered that the entire amount be transferred to the Foundation. The College appeals. We reverse.

This matter began in 1967 when Dr. and Mrs. J. W. Carpenter transferred about $250,000 to the New Orleans Baptist Theological Seminary. The transfer was subject to several conditions such as the use of the income to be generated by the principal fund. The main condition was that the Seminary agreed to transfer the money to another tax-exempt eleemosynary organization chosen by Dr. Carpenter anytime after a two-year period.

In 1972, Dr. Carpenter began discussions with Dr. Hamrick, then President of the College, concerning the transfer of these funds to the College's Department of Religion. (Dr. Carpenter was chairman of the Department of Religion at that time.) The funds were to be transferred for an indefinite period of time pending the establishment of Dr. Carpenter's family religious foundation. When Dr. Carpenter's foundation was fully established, the College was to transfer the funds to it. Not surprisingly, Dr. Hamrick readily agreed to these terms by letter dated September 7, 1972.

Dr. Carpenter then began organizing his tax-exempt entity, the Foundation. The Foundation was incorporated in the state of South Carolina and later received I.R.S. approval of its tax-exempt status in April of 1973, subject to the condition that the Foundation amend its charter to meet certain federal tax requirements.

In a letter dated February 1, 1973, from Dr. Carpenter to the New Orleans Seminary, Dr. Carpenter wrote:

> The time has come that I wish to make a formal request that the entire corpus plus the one-half income which has been plowed back 'into the principle [sic] in order to offset the built-in inflation of the national economy' be transferred to the Department of Religion, Baptist College at Charleston, South Carolina. I ask that this be done in its entirety with the quickest dispatch. This should not be a problem since the Carpenter Fund has been invested in tact [sic] with the Northern Trust Company of Chicago. We are seeking to enlarge the Religion Department at the Baptist College at Charleston into a School of Religion with its own building, faculty and staff. This money would become part of the basis of a campaign for matching funds to raise approximately $2 million.

In an undated letter written early in May of 1973, Dr. Carpenter then requested the New Orleans Seminary, pursuant to their agreement, to "donate" the funds to the College. Subsequent negotiations were conducted to ensure that the transfer followed all federal laws required to keep the funds tax-exempt.

The actual transfer occurred on June 5, 1973. The transferring document is entitled an "Act of Donation". The only two parties to the document were the New Orleans Seminary and the College. None of the language in this document reads in terms of a limited, revocable transfer. Instead, the New Orleans Seminary did "irrevocably give, grant, alienate, confirm, and donate" the funds to the College, "its successors and assigns forever". After the execution of the documents and as a further indication of his donative intent, Dr. Carpenter endorsed a separate check to the College for $992.11 which was interest on the fund.

The only reference to Dr. Carpenter in this document is a statement that the donation occurred pursuant to his instructions. A copy of Dr. Carpenter's instructions to the New Orleans Seminary was attached to the document. His instructions are found in the undated letter of early 1973. This letter makes no mention of a limited, revocable transfer. It further states that neither Dr. Carpenter nor his wife were to have any control over the funds to be transferred to the College.

Neither my wife, Lucy Sells Carpenter, nor I will in any way come into control of the moneys to be transferred by you to the Baptist College at Charleston, all of which are to be used solely to foster the purposes of that institution.

The Master ruled that it would be inequitable for the College to keep the funds and imposed a constructive trust.

The parties consented, pursuant to Sections 14-11-90 and 15-31-10, Code of Laws of South Carolina, 1976, to have the Master's decision appealed directly to the Supreme Court. *See Glass v. Glass*, 278 S. C. 527, 299 S. E. (2d) 693 (1983). Even though the consent was not reduced to writing as is now required (*see Long v. Ehni*, order filed April 19, 1983, Smith's Advance Sheets), this requirement only applies to appeals from a Master's final judgment filed after April 19, 1983. *Precision Power Co. v. Adams*, order filed July 20, 1983, Davis' Advance Sheets. Since this appeal was filed prior to April 19, 1983, it is proper.

In an action in equity, tried before one judge, this court has jurisdiction to find facts in accordance with its views of the preponderance of the evidence. *Townes Associates, Ltd. v. City of Greenville*, 266 S. C. 81, 221 S. E. (2d) 773 (1976).

The Master admitted extrinsic evidence under an exception to the parol evidence rule which contradicted the document accomplishing the donation. Ordinarily, parol evidence cannot be given for the purpose of changing an intention or understanding different from that which is expressed in a written agreement. *Muckelvaney v. Liberty Life*, 261 S. C. 63, 198 S. E. (2d) 278 (1973); *McLeod v. Sandy Island Corp.*, 265 S. C. 1, 216 S. E. (2d) 746 (1975). However, when there is a controversy between a third party and one of the parties to the instrument in question, parol evidence is admissible. *City of Orangeburg v. Buford*, 227 S. C. 280, 87 S. E. (2d) 822 (1955); *Suttles v. Wood*, 312 S. E. (2d) 574 S. C. App. (1984). Here, the Foundation was not a party to the Act of Donation; only the College and the New Orleans Seminary. Thus, the evidence concerning Dr. Carpenter's intentions was properly admitted under this exception to the parol evidence rule.

The question for our consideration is whether or not Dr. Carpenter, when he exercised his right to transfer the funds, intended to make a gift of the funds to the College.

A gift is a voluntary transfer of property by one to another without any consideration or compensation therefor. *McLeod v. Sandy Island Corp., supra.* An inter vivos gift is a contract between the living which takes place by the mutual consent of the donor, who divests himself of the property given in order to transmit the title to it to the donee gratuitously, and the donee, who accepts and acquires legal title thereto. It operates, if at all, in the donor's lifetime, immediately and irrevocably. The mere intention to give without delivery is unavailing, the intention must be executed by a complete and unconditional delivery. The transfer of possession and title must be absolute and go into immediate effect, so far as the donor can make it so by intent and delivery. To constitute a valid gift, the donee must have an immediate right to the property; in other words, the donee must be vested with immediate dominion and control. *Lynch v. Lynch,* 201 S. C. 130, 21 S. E. (2d) 569 (1942). *See also Watkins v. Hodge,* 232 S. C. 245, 101 S. E. (2d) 657 (1958); *Smith v. Johnson,* 223 S. C. 64, 74 S. E. (2d) 419 (1953).

There is no doubt that the College became vested with immediate dominion and control of the funds. The question is whether Dr. Carpenter intended to vest an irrevocable title in the College. *Watkins v. Hodge, supra.*

As evidence of Dr. Carpenter's intent, there is a letter dated September 1, 1972, from Dr. Carpenter to Dr. Hamrick, in which he talks of a transfer "for an indefinite period of time pending the establishment" of the Foundation. There is Dr. Hamrick's reply to this letter in which he agrees to these terms. And finally, there is the Act of Donation which makes a complete and irrevocable transfer of title, and the instructions for the transfer which state that neither Dr. Carpenter nor his wife is to have any control over the funds.

If a donor intends to confer on another ownership of his property, and if he proceeds so far as to do it, then the gift is complete. *Meyerson v. Malinow,* 231 S. C. 14, 97 S. E. (2d) 88 (1957). Dr. Carpenter controlled the transfer of this fund in the same manner as if he owned it outright. He and the New Orleans Seminary made all the arrangements necessary to effectuate the transfer. The Act of Donation states that it was "executed pursuant to instructions of Dr. J. Walter Carpenter". If he had so desired, Dr. Carpenter could

have easily included words of limitation designed to restrict the extent of the transfer. Yet he did not. Dr. Carpenter proceeded with the transfer as if he intended to confer complete and irrevocable ownership in the College.

In determining the intent with which a transfer of property is made, the testimony of the transferor cannot override the written statement of his intentions in terms of probative value. *Copeland v. Craig*, 193 S. C. 484, 8 S. E. (2d) 858 (1940). Mere improvidence is not sufficient to invalidate a donation. *Page v. Lewis*, 209 S. C. 212, 39 S. E. (2d) 787 (1946). Dr. Carpenter is obviously a very intelligent man who had this transfer structured to fully comply with the federal tax-exempt entity laws. Had he desired to bestow less than complete title on the College, he could have readily done so.

In further support of our ruling that Dr. Carpenter intended to make a gift of these funds is the fact that his own religious foundation received its tax-exempt status prior to the date the transfer to the College was made. If Dr. Carpenter intended to make a revocable transfer "for an indefinite period of time pending the establishment" of his own tax-exempt foundation, he could have simply had the New Orleans Seminary transfer the funds to the Foundation in April of 1973 when it received its tax-exempt status. Instead, he continued with his plans to transfer the funds to the College despite the fact that the main reason for this transfer no longer existed.

The Master imposed a constructive trust on the funds in question. Constructive trusts are resorted to by equity to vindicate right and justice or to frustrate fraud. *All v. Prillaman*, 200 S. C. 279, 20 S. E. (2d) 741 (1942). Generally, fraud is an essential element of constructive trusts but it need not be actual fraud. *Bank of Williston v. Alderman*, 106 S. C. 386, 91 S. E. 296 (1917); *Dominick v. Rhodes*, 202 S. C. 139, 24 S. E. (2d) 168 (1943). The elements of a constructive trust must be established by evidence which is clear, definite, unequivocal and convincing. *All v. Prillaman, supra; Hodges v. Hodges*, 243 S. C. 299, 133 S. E. (2d) 816 (1963); *Ramantanin v. Poulos*, 240 S. C. 13, 124 S. E. (2d) 611 (1962).

We see no evidence of fraud in this case, actual or otherwise. The case of *Whitmire v. Adams*, 273 S. C. 453, 257 S. E. (2d) 160

(1979), is similar to the instant one. There, a small church, the Joanna Revival Center, decided to become an affiliate of the Assemblies of God. The Revival Center became an affiliate, and the congregation transferred title to the church's real estate from the Trustees of the Joanna Revival Center to the Trustees of the Assemblies of God because they were told that the church real estate was being held illegally by the Trustees of the Joanna Revival Center.

The Supreme Court refused to impose a constructive trust on the real estate holding that such a statement cannot be properly considered as supplying the clear evidence of fraud or misconduct upon which a constructive trust must be premised, that the Revival Center was fully informed of the church's business, and that there was no evidence of surreptitious activity on the part of the Assemblies of God or others on their behalf.

Here, Dr. Hamrick's statement, in reply to Dr. Carpenter's proposal that the College hold the funds for an indefinite period of time, is not clear and convincing evidence of actual or constructive fraud. First, Dr. Carpenter and the New Orleans Seminary arranged the transfer. The document of transfer could have been worded in any manner they so desired. Second, there is no evidence of any surreptitious activity on the part of Dr. Hamrick, the College, or others on their behalf. The College had no control over the language to be used in the Act of Donation. It simply received what was given to it.

There is no evidence that the College induced the transfer of the funds by actual or constructive fraud or wrongdoing of any kind. The written assignment, absolute on its face, is presumed to be what the words import, the transfer of title and beneficial ownership of the funds to the College. The burden was on the Foundation to overcome this presumption by clear and convincing evidence. *Faulkner v. Faulkner*, 257 S. C. 172, 184 S. E. (2d) 718 (1971). The evidence presented was manifestly insufficient to do so.

Reversed.

SANDERS, Chief Judge, and BELL, J., concur.