478 S.E.2d 287

Barbara **WORRELL**, Respondent–Appellant,

v.

**Ray D. LATHAN and Hank Meyer, Personal Representatives of the Estate of C. Elizabeth Brisendine, Appellants–Respondents.**

No. 2565.

Court of Appeals of South Carolina.

Submitted Aug. 16, 1996.

Decided Oct. 7, 1996.

Ray D. Lathan, of Lathan & Barbare, Greenville, for appellants-respondents.

E. Scott Sanders, of Gibbes, Gallivan, White & Boyd, Greenville, for respondent-appellant.

GOOLSBY, Judge:

Barbara Worrell brought this action as a claim against the estate of C. Elizabeth Brisendine. A jury in the Court of Common Pleas found for Worrell in the amount of $10,000. Lathan and Meyer, personal representatives for the estate, appeal the trial court's denial of their motions for directed verdict and judgment notwithstanding the verdict. Worrell appeals the trial court's denial of prejudgment interest. We reverse and remand.[1]

 We are required to view the facts in the light most favorable to the nonmoving party, here Worrell, to determine whether the trial court should have granted the motions for directed verdict and judgment notwithstanding the verdict.

---

1. Because oral argument would not aid the court in resolving any issue on appeal, we decide this case without oral argument pursuant to Rule 215, SCACR.

*Crossley v. State Farm Mut. Auto. Ins. Co.*, 307 S.C. 354, 415 S.E.2d 393 (1992). We must determine if there was sufficient evidence to submit this issue to the jury. We do not think there was.

Worrell enjoyed a long-term friendship with Brisendine. Brisendine often spent time at the beach with Worrell's family. The two ladies saw each other at social events and occasionally travelled together. During Brisendine's terminal illness, Worrell drove Brisendine to and from the hospital and doctors' appointments. On previous occasions, Brisendine had attempted to give Worrell money, but Worrell never accepted it. Worrell visited Brisendine at her home in early September, 1993, during Brisendine's terminal illness. Brisendine wrote a check, made an entry in her checkbook, and attempted to present the check to Worrell. Worrell refused the check, telling Brisendine she looked after her out of friendship and did not desire payment for helping a friend. Brisendine returned the check and checkbook to her pocketbook. Worrell did not see the actual check and she did not know the amount for which it was written. She was later told the check would "be in the mail to [her]."

Henry Meyer, who took care of Brisendine's finances by handling her bank statements and writing checks for her signature, corroborated Worrell's testimony. Meyer saw an entry for $10,000 to Barbara Worrell in Brisendine's checkbook and discussed the entry with Brisendine. Brisendine told him she was going to mail the check to Worrell.

Brisendine died on October 21, 1993. Worrell did not hear anything further about the check until January, 1994, when Meyer, now serving as one of the personal representatives of the estate, contacted her. Meyer informed Worrell a third party had endorsed her signature and attempted to cash the check at NationsBank. Worrell now first learned the amount of money Brisendine wanted to give her. She "took an interest and decided to investigate it to find out exactly what Ms. Brisendine had intended and wanted to be done with that check and the funds that were represented by that check."

Worrell filed a claim against the estate for the $10,000, alleging the check was intended as a gift. The claim was refused by the personal representative.

■ "The established general rule is that gifts inter vivos and causa mortis must be fully and completely executed—that is, there must be a donative intent to transfer title to the property, a delivery by the donor, and an acceptance by the donee." 38 Am.Jur.2d *Gifts* § 18, at 820 (1987).

■ In this case, there was a donative intent to give the gift. *Meyerson v. Malinow,* 231 S.C. 14, 97 S.E.2d 88 (1957). Brisendine stated to both Worrell and Meyer her intention to give Worrell the check. Brisendine also expressed her intention to give $10,000 to Worrell by entering, in her own hand, this information in her checkbook.

We are, however, unable to find any evidence reasonably tending to show any form of delivery of the check. No evidence was presented to show the check was mailed or in the hands of an agent. No reasonable explanation has been provided for the whereabouts of the check between the time Brisendine initially attempted to deliver it to Worrell, when the gift was declined, and the subsequent reappearance of the check in the hands of a third party. Without evidence of delivery, the facts of this case are insufficient to establish a gift regardless of the donor's intent.

■ "The mere intention to give [a gift] without delivery is unavailing, the intention must be executed by a complete and unconditional delivery. The transfer of possession and title must be absolute and go into immediate effect, so far as the donor can make it so by intent and delivery." *Baptist Found. for Christian Educ. v. Baptist College at Charleston,* 282 S.C. 53, 58, 317 S.E.2d 453, 457 (Ct.App.1984). *See Powell v. Ins. Co. of N. America,* 285 S.C. 588, 590, 330 S.E.2d 550, 552 (Ct.App.1985) ("[A] gift in order to be valid must operate *in praesenti.*").

■ Acceptance by the donee of a gift *inter vivos* or *causa mortis* is generally held to be an essential element of a gift. Acceptance is sufficient if the gift is accepted before revocation by the donor, or *before revocation by the death of the donor.* 38 Am.Jur.2d *Gifts* § 34–35, at 837–38 (1987) (emphasis added). In this case, the unexplained circumstances surrounding Worrell's not receiving the check could indicate Brisendine either revoked or intended to revoke the gift

before her death. In any event, Brisendine's death effectively revoked the gift. *See also Baptist Found.*, 282 S.C. at 58, 317 S.E.2d at 457 ("[An *inter vivos* gift] operates, if at all, in the donor's lifetime.").

Because there was insufficient evidence from which the jury could reasonably infer a valid gift was made, the trial court erred in denying the personal representatives' motions for directed verdict and judgment notwithstanding the verdict.

Because we have reversed the jury's award, we do not reach the issue of prejudgment interest on the award.

**REVERSED AND REMANDED.**

HUFF and HOWARD, JJ., concur.