THIS OPINION HAS NO PRECEDENTIAL 
 VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT 
 AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
Zepher Frederick, as Personal Representative of the Estate of Forriest 
 Cave,        Appellant,
 
 
 

v.

 
 
 
Manly Dunbar; First Citizens Bank & Trust Company of South Carolina; 
 and Lang Dunbar,        Defendants,
Of Whom Manly Dunbar and Lang Dunbar are the       
Respondents.
 
 
 

Appeal From Barnwell County
Richard B. Ness, Special Referee

Unpublished Opinion No. 2004-UP-187
Submitted March 8, 2004  Filed March 
 18, 2004

AFFIRMED

 
 
 
J. Martin Harvey and Pete Kulmala, both of Barnwell, for Appellants.
Miles Loadholt, of Barnwell, for Respondents.
 
 
 

PER CURIAM:  Appellant, the personal representative 
 of the Estate of Forriest Cave, brought this action against Respondents, Manly 
 Dunbar and Lang Dunbar, seeking to determine that certain cashiers checks and 
 certificates of deposit were assets of the decedents estate.  The matter was 
 referred to a special referee, who ruled in favor of Respondents.  This appeal 
 follows.  We affirm. [1] 
FACTS
Forriest Cave died in Barnwell County on August 
 26, 2001.  Appellant, a resident of Barnwell County, is Caves niece, the sole 
 devisee in Caves Last Will and Testament and the personal representative of 
 the estate.  Manly Dunbar and Lang Dunbar are Caves nephews.
Although they lived in Ohio, the Dunbars often 
 visited Caves home.  On a visit to her home in 1999, Cave informed the Dunbars 
 that she had $65,000.00 in cash hidden underneath her mattress.  The Dunbars 
 told her it was not wise to keep such large amounts of cash in her home and 
 convinced her to put the money in certificate of deposits.  As a result, on 
 August 26, 1999, Cave put the money in two certificate of deposits with First 
 Citizens Bankone issued in Caves name only, the other issued in Caves name, 
 payable on death to Manly Dunbar.
On a subsequent visit in April 2000, Cave told 
 the Dunbars about an additional sum of cash in the house.  Cave converted this 
 cash into cashiers checks, one made payable to Cave only and two made out to 
 Forriest Cave or Manly D. Dunbar or Lang D. Dunbar, Jr.  Cave placed the cashiers 
 checks in a bank bag, which she gave to the Dunbars along with the bank bags 
 key, asking them to take the bag with them back to Ohio.  Deciding it was best 
 to leave the bag with Cave, the Dunbars hid the bank bag in Caves home, though 
 they retained possession of the bags key.
Upon Caves request, Manly Dunbar again visited 
 Cave in March 2001.  After seeing his aunt, Manly Dunbar went to First Citizens 
 Bank and spoke with certain representatives of the bank.  As a result of the 
 conversation, Barbara Wright, a longtime employee of the bank and lifetime friend 
 of Cave, traveled to Caves home with specific instructions from her supervisor 
 not to transact any business with Cave unless she was alert and in a position 
 to do business.  As per Caves instructions, Wright assisted Cave in performing 
 transactions that made Manly Dunbar a joint owner of a certificate of deposit 
 having a face value of $16,659.83, a joint owner of Caves checking account, 
 and a joint owner of Caves safety deposit box.
Appellant commenced this action on August 31, 2001 
 by filing a Complaint, along with a Rule to Show Cause and Temporary Restraining 
 Order seeking to prohibit the Dunbars from disposing or liquidating the cashiers 
 checks and certificate of deposits.
On December 20, 2001, the circuit court 
 referred this matter to a special referee pursuant to Rule 53, SCRCP on Appellants 
 motion.  On the accompanying form order, the circuit court left blank the line 
 supplied for the deadline for which the case must be heard and final order filed. 
  A hearing was held before the special referee on February 6, 2002, and an order 
 in favor of the Dunbars was filed on September 18, 2002.
LAW/ANALYSIS
Timeliness of Order/ Jurisdiction
Frederick asserts that the special referees 
 order should be declared void and without effect because the December 20, 2001 
 Order of Reference had expired, leaving the special referee without jurisdiction 
 to issue the order.  We disagree.
Effective July 1, 1985, the South Carolina 
 Supreme Court issued an order outlining certain procedures applicable to masters-in-equity 
 and referees.  This order included the following provisions:

IT IS FURTHER ORDERED that within sixty (60) days from the 
 date of filing of the Order of Reference, the Master or Referee shall hear the 
 referred matter.
IT IS FURTHER ORDERED that within sixty (60) days from the 
 date of the hearing, the Master or Referee shall make and file his report or 
 order with the clerk of court, unless such time shall have been extended in 
 writing by the Chief Judge for Administrative Purposes upon a showing of exceptional 
 circumstances.

The crux of Appellants argument is that because 
 over seven months passed between the hearing and order in this case, the special 
 referee failed to comply with the supreme courts 1985 mandate that referees 
 file orders within sixty days of holding a hearing on the matter.  Citing our 
 decision in Smith v. Ocean Lakes Family Campground, 315 S.C. 379, 433 
 S.E.2d 909 (Ct. App. 1993), Appellant contends the failure to meet the deadline 
 divested the special referee of jurisdiction over the matter.
Appellants reliance on the 1985 supreme 
 court order to establish a timeliness requirement is misplaced because it no 
 longer governs the procedure for references to masters-in-equity and referees.  
 Instead, Rule 53, SCRCP has become the controlling authority over such references 
 and has fully supplanted the 1985 order.
In 1986, our supreme court substantially amended 
 Rule 53, SCRCP.  Among other changes, the amended rule left scheduling of the 
 time and place of hearings to the referee.  Such a delegation of discretionary 
 scheduling authority cannot be concurrently reconciled with the mandatory sixty-day 
 time limit proscribed by the 1985 order, and as such, the amended Rule 53 must 
 be understood to supplant its predecessor.  Cf. Ramsey v. County of 
 McCormick, 306 S.C. 393, 397, 412 S.E.2d 408, 410 (1991) ([W]here conflicting 
 provisions exist, the last in point of time or order of arrangement, prevails.).
Moreover, the 1986 amendments also made clear that 
 referees have the same powers as a court sitting without a jury unless the order 
 of reference explicitly limits the referees authority.  Rule 53, SCRCP, Notes 
 to the 1986 Amendments.  Accordingly, just as the circuit courts order of reference 
 can limit the subject matter to which the referees authority extends, so too 
 can the order of reference limit the duration of that authority.  Such was our 
 holding in Ocean Lakes.  In that case, we ruled that a master had been 
 divested of jurisdiction for failing to file an order within the ninety-day 
 time limit the circuit court included in its order of reference.  Id.  
 Unlike the order of reference in Ocean Lakes, which expired by its own 
 terms 90 days after the date of the order of reference, the order of reference 
 in the instant contained no temporal limitation, no period after which it would 
 automatically expire.  See Ocean Lakes, 315 S.C. at 381, 433 S.E.2d 
 at 910.  
The rule was amended again in 1999, and as the 
 following notes to the amendment explain, previous procedural restrictions were 
 done away with:  

The detailed discussion of the powers of masters and special 
 referees, and the procedure to be followed in matters pending before them, has 
 been eliminated as unnecessary since the master or special referee has all the 
 powers that a circuit court judge sitting without a jury would have in the matter 
 and the procedure is that provided by the South Carolina Rules of Civil Procedure.

Rule 53, SCRCP, Notes to the 1999 Amendment.
Accordingly, as a corollary to our supreme 
 courts adoption of Rule 53 as the exclusive controlling authority for references 
 to masters and referees, the 1985 order is no longer of any effect, and masters 
 and referees are subject to no temporal limits for order entry other than those 
 included in the order of reference.  Therefore, because the order of reference 
 contained no time restraint, jurisdiction remained soundly with the referee 
 when the order was issued on September 17, 2002.
Inter Vivos Gift
Appellant asserts that the special referee 
 erred in concluding that the cashiers checks were inter vivos gifts to the 
 Dunbars.  We disagree.
An inter vivos gift is a contract between the 
 living which takes place by the mutual consent of the donor, who divests himself 
 of the property given in order to transmit the title to it to the donee gratuitously, 
 and the donee, who accepts and acquires legal title thereto.  Baptist Found. 
 for Christian Educ. v. Baptist Coll. at Charleston, 282 S.C. 53, 58, 317 
 S.E.2d 453, 457 (Ct. App. 1984).  In order to establish the existence of an 
 inter vivos gift, there must be a donative intent to transfer the property, 
 a delivery by the donor, and an acceptance by the donee.  Worrell v. Lathan, 
 324 S.C. 368, 371, 478 S.E.2d 287, 288 (Ct. App. 1996).  
The thrust of Appellants contention in this case 
 is that the delivery element was not satisfied because Cave never relinquished 
 possession.  Although a transfer of possession is perhaps the clearest form 
 of delivery, it is not the only method by which delivery can be made.  Our supreme 
 court explained this in Smith v. Johnson, 223 S.C. 64, 70, 74 S.E.2d 
 419, 421 (1953), when it stated:

It has been settled that it is not necessary that there should 
 be in all cases an actual manual delivery.  The principle is stated thus:  Property 
 in a chattel cannot be transferred by a parol gift without delivery; but by 
 delivery is not meant an actual manual delivery in all cases, but any circumstances 
 amounting to a clear demonstration of the intention of the one to transfer, 
 and of the other to accept, and which puts it into his power, or gives him authority 
 to take possession, is all that is necessary, and is a fact that is left to 
 the jury.

Id. at 70, 74 S.E.2d at 421 (internal quotations 
 omitted).  Indeed, whenever a donor intending to make a gift so acts as to 
 put it within the power of the donee to take possession and exercise dominion 
 and control, he has completed delivery, whether he actually makes a manual deliverance 
 of the thing itself or not.  Copeland v. Craig, 193 S.C. 484, 496, 8 
 S.E.2d 858, 866 (1940).  
Applying the forgoing to the case at bar, 
 when Cave bestowed the key to the bank bag upon the Dunbars, she relinquished 
 and the Dunbars retained much more than a small metallic object.  Keys are instrumentalities 
 of access; to deliver a key is to deliver that which is held under lock.  See 
 Jaggers v. Estes, 22 S.C.Eq. (3 Strob. Eq.) 379 (1849) (But if the key 
 be delivered of a desk, in which a paper or a jewel is contained, the paper 
 or jewel is thereby delivered; because he who has the key has the dominion of 
 it.).  Although the Dunbars left the bank bag hidden in Caves residence, by 
 retaining the key given to them, they likewise retained the power to take possession 
 of the bags contents.  As correctly noted by the special referee, possession 
 of the key gave the Dunbars sole authority to take possession of the cashiers 
 checks at any time they desired, as even Ms. Cave did not have access to the 
 checks without the key to open the locked bag.  Accordingly, because Caves 
 delivery of the key satisfied the element of delivery for the cashiers checks, 
 the continued physical presence of the bag in Caves residence does not render 
 ineffective the inter vivos gift to the Dunbars.
Mentally Competency
Lastly, Appellant contends that the special 
 referee erred in concluding that Cave was mentally competent when she executed 
 the banking transaction on March 16, 2001.  We disagree.
When a party challenges a transaction based on 
 mental incompetence, the party alleging incompetence bears the burden of proving 
 incapacity at the time of the transaction by a preponderance of the evidence.  
 In re Thames, 344 S.C. 564, 572, 544 S.E.2d 854, 858 (Ct. App. 2001) 
 (internal citations omitted).  This Court has previously defined contractual 
 capacity as a persons ability to understand, at the time the contract is executed, 
 the nature of the contract and its effect.  Id. at 570, 544 S.E.2d at 
 857.  To make this determination, we generally inquire as to whether the individual 
 lacked sufficient mental capacity to reasonably understand the transaction, 
 including the consequences and effects the transaction has upon the individuals 
 rights and interests.  Id.  
At trial, Appellant relied primarily on assessments 
 of Caves capacity in generalincluding testimony that she tended to be more 
 alert in the afternoon than in the morningto insinuate her incapacity on the 
 morning of the transaction.  The special referee noted this deficiency by stating 
 that although Appellant offered several witnesses to testify about Ms. Caves 
 mental state prior to and subsequent to March 16, [Appellant] offered no testimony 
 about Ms. Caves mental capacity on the date these transactions occurred.  
 The referees analysis is in keeping with the rule that the question of competency 
 relates only to the date of the transaction.  Church v. Trotter, 278 
 S.C. 504, 506, 299 S.E.2d 332, 333 (1983) ([T]his Court has looked specifically 
 to the condition of a party at the time of a transaction.).  Respondent, on 
 the other hand, introduced the testimony of Ms. Wright, the bank employee under 
 specific instructions not to transact any business with Cave unless she was 
 alert and in a position to do business.  This was the only testimony of an unbiased 
 witness as to Caves capacity at the time of the transaction.  Accordingly, 
 viewing the record in full, we find sufficient evidence to support the referees 
 conclusion that the burden of proving Caves incapacity was unmet by Appellant.
AFFIRMED.
HEARN, C.J., ANDERSON and BEATTY, JJ., concur.

 
 [1] We decide this case without oral argument pursuant 
 to Rule 215, SCACR.